THE PEOPLE OF THE STATE OF YORK, Respondent, v DAVID WILLIAMS, Appellant.

First Department, February 24, 1981

### APPEARANCES OF COUNSEL

*John Van Der Tuin* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Clare McCue* of counsel *(Jerrold Neugarten* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

We are asked to determine the propriety of a stop and frisk based upon the observation of a coat pocket bulge. Trial Term, after a hearing at which Police Officer Thomas Saville and defendant were the only witnesses, denied suppression.

On November 25, 1973, a Saturday night, Officer Saville, with two other officers, was assigned to an anticrime unit. At about 9:30 that evening the three officers, in plain

clothes and in an unmarked police van, were stopped on Pleasant Avenue near the northeast corner of 120th Street, from where they observed a 1974 Lincoln Continental parked on 120th Street, about 75 feet from the intersection. Inside the car were three males, one in the driver's seat, and two, including defendant, in the rear passenger seat.

Officer Saville observed the occupants of the car engaged in conversation and looking toward a building as they spoke. When, after approximately 15 minutes, the men left their automobile and started to cross 120th Street, the officers decided "to check their license and registration, things like that." They drove the van around the corner and pulled alongside the three men in the street. From his seat in the van Officer Saville observed a bulge in the right hand pocket of defendant's almost ankle-length overcoat. The bulge "looked * * * like it would be a revolver", because of "[t]he way it was in [his] pocket, the way his pocket was hanging. It had a bulge, draped like something heavy was in it." The bulge was described as being about three to four inches. Thereupon Officer Saville jumped from the van, grabbed defendant's pocket, felt a gun, and removed a .38 caliber revolver. Defendant was arrested and eventually pleaded guilty to the crime of criminal possession of a weapon in the third degree.

Defendant's version of the incident differed substantially. The court credited the officer's testimony and, finding justification for a stop and frisk (CPL 140.50), denied suppression. Even crediting the officer's story fully, however, we cannot find a basis for a reasonable suspicion of criminal activity to justify a frisk under CPL 140.50 (subd 3).

Reasonableness is the touchstone by which police conduct is measured under the Fourth Amendment. (Cady v Dombrowski, 413 US 433, 439; People v Prochilo, 41 NY2d 759, 761.) "Whether * * * a particular search or seizure is to be considered reasonable requires weighing the government's interest in the detection and apprehension of criminals against the encroachment involved with respect to an individual's right to privacy and personal security". (People v Cantor, 36 NY2d 106, 111; Terry v Ohio, 392 US 1.) In weighing these interests, "we must consider first whether

* * * the police action was justified in its inception and secondly whether * * * that action was reasonably related in scope to the circumstances which rendered its initiation permissible." *(People v De Bour,* 40 NY2d 210, 215.) Reasonableness is an amorphous concept. Hence, the propriety of police conduct in a citizen street encounter "must necessarily turn on the facts in each individual case." *(People v Green,* 35 NY2d 193, 195.)

At least three factors warrant consideration in determining the constitutionality of a police officer's seizure of a handgun: "Was there proof of a describable object or of describable conduct that provides a reasonable basis for the police officer's belief that the defendant had a gun in his possession? Was the manner of the officer's approach to the defendant and the seizure of the gun from him reasonable in the circumstances? Was there evidence of probative worth that there had been a pretext stop and frisk or that the police were otherwise motivated by improper or irrelevant purpose?" *(People v Prochilo,* 41 NY2d, at pp 761-762.)

The actions of defendant and his companions prior to the officers' approach were, at most, equivocal. As near as can be ascertained three men sat in a late-model car for 15 minutes, looked at a building, and finally left the car. Notwithstanding Officer Saville's testimony that the area is noted for muggings, robberies and narcotics,[1] such conduct does not justify a conclusion that they were about to embark on a criminal enterprise,[2] and certainly would not suggest that they were armed. (See *People v Sobotker,* 43 NY2d 559, 564; *People v Julian,* 43 NY2d 733; see, also, *People v Simmons,* 58 AD2d 524; *People v Batino,* 48 AD2d 619.) "[I]nnocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand." *(People v De Bour,* 40 NY2d, at p 216.)

1. A factor which has not been uniformly accepted as a constituent of probable cause. (See concurring opn, *People v McRay,* 51 NY2d 594.)

2. Thus, the People do not argue that the circumstances justified exercise of the police officers' common-law right of inquiry, a right which "is activated by a founded suspicion that criminal activity is afoot". *(People v De Bour,* 40 NY2d, at p 223.)

Of course, a police officer, despite the absence of any concrete indication of criminality, "may approach a private citizen on the street for the purpose of requesting information" if he has "some articulable reason sufficient to justify the * * * action". (People v De Bour, 40 NY2d, at p 213.) The stop, however, must not be "the product of mere whim, caprice, or idle curiosity." (People v Ingle, 36 NY2d 413, 420.)

Officer Saville testified that after the three men exited from the car together the officers decided to make a license and registration check. It should be noted, however, that such a check is permissible only when an officer reasonably suspects that a violation of the Vehicle and Traffic Law has occurred or when it is conducted pursuant to nonarbitrary, nondiscriminatory, uniform procedures for detecting violations. (People v Sobotker, 43 NY2d, at p 563; People v Ingle, 36 NY2d 413, supra.) Here, the officers had never seen the automobile in operation; it was parked before they arrived at the scene.[3]

A police officer is authorized to stop and detain forcibly if he entertains a reasonable suspicion that a person has committed, is committing, or is about to commit a felony or misdemeanor (CPL 140.50, subd 1; see, also, Terry v Ohio, 392 US 1, supra; People v De Bour, 40 NY2d, at p 223; People v Cantor, 36 NY2d, at pp 112-113), and to frisk if he reasonably suspects that he is in danger of physical injury (CPL 140.50, subd 3; People v De Bour, 40 NY2d, at p 223.) Not only does the evidence fail to show any antecedent conduct evincing criminality on the part of defendant and his companions, it lacks "proof of a describable object" from which the officer could conclude that defendant had a gun. All he could see was a bulge in defendant's pocket. To contrast, in the two cases where suppression was denied in the trilogy of cases comprising Prochilo (41 NY2d 759, supra) the arresting officer testified that he observed "the complete outline of a revolver at [defendant's] side"

---

3. Irrespective of whether the initial approach was justified, an issue we need not reach, we reject defendant's argument that he was seized when the officers' van pulled alongside him, thereby, he contends, blocking his path across 120th Street.

*(People v Prochilo, supra,* at p 762), and " 'the configuration of a handgun' " *(People v Goings,* 41 NY2d, at p 762). In the third case the court granted suppression because the arresting officer could identify only "a heavy object" in the defendant's pocket, and the court found no suggestion in the officer's testimony that he was apprehensive for his own safety *(People v Bernard,* 41 NY2d, at p 763).

Absent other circumstances evoking suspicion the observation of a mere bulge or heavy object in a pocket does not impel a reasonable conclusion that the person is armed. (See *People v Blackman,* 61 AD2d 916.) On the surface, at least, the situation confronting the officer in *Bernard* was more discomforting than here, and yet the court could not find the defendant's conduct "to be reasonably referable to or indicative of the presence of a revolver." *(People v Bernard, supra,* at p 763.) Bernard was in the company of a known pimp who had flagged down the officers, and while the pimp engaged the officers in conversation, Bernard stood behind him with his hands inside the pockets of his long outer coat, slouched forward from the waist at a 45 degree angle. The officer testified (p 763) that he detected a "nervous uneasiness" in Bernard's demeanor.

In comparison, defendant's behavior was not unusual. (Of course, we recognize that he did not know he was in the presence of police until after they had exited from the van and seized the gun.) Although he was seen during the 15 minutes looking at a building from the car in which he sat, no furtive movements were made towards the building, the hour was not late, the area was residential, and nothing defendant or his companions did could be construed to ascribe their presence in the area to criminal motives.

Moreover, the most that the officer could offer in support of his conclusion that the bulge "looked to me like it would be a revolver" was "the way [defendant's] pocket was hanging", "like something heavy was in it." We find no difference between the bulge here and the heavy object in *Bernard (supra).* Neither is reasonably indicative of the presence of a revolver. "[A] pocket bulge [can] be caused by any number of innocuous objects". *(People v De Bour,* 40 NY2d 210, 221, *supra.)* Even where an officer has actu-

ally touched, albeit inadvertently, a solid indescribable object on an individual's person the resultant frisk has not been sanctioned. (See *People v Sanchez*, 38 NY2d 72.) Absent other circumstances indicative of or referable to the possession of a handgun, a police officer must show that the object or appearance thereof which is the focus of his attention resembled a gun. A "bulge" or "heavy object" is much less definitive than "the complete outline of a revolver" or "the configuration of a handgun" observed by the arresting officer in the cases where the Court of Appeals upheld the suppression.

In view of our determination that the gun should be suppressed we need not reach defendant's other contention, namely, the invalidity of the guilty plea.

Accordingly, the judgment, Supreme Court, New York County (KELLY, J., at suppression; HAFT, J., at plea and sentence), entered September 6, 1978, convicting defendant of criminal possession of a weapon in the third degree should be reversed, on the law, the revolver suppressed, and the indictment dismissed.

MURPHY, P. J., CARRO and SILVERMAN, JJ., concur.

Judgment, Supreme Court, New York County, rendered on September 6, 1978, reversed, on the law, the revolver suppressed, and the indictment dismissed.