OPINION OF THE COURT
Chief Judge Cooke.
A suspect may not be frisked by a police officer who has no knowledge of facts that would provide a basis for suspecting that the individual is armed or dangerous. The absence of such circumstances leads to the conclusion that the search here was unreasonable as a matter of law and, *53 therefore, the order of the Appellate Division should be reversed.
Shortly before midnight on January 4, 1974, two black men armed with a shotgun attempted to rob a liquor store, shooting the owner while doing so. Officer John Morris went to the scene, but found that other officers had already arrived and that the victim had been taken to the hospital. Officer Morris returned to his radio car and began driving back to the precinct house. Two blocks from the robbery scene, he was flagged down by a man who identified himself as a patron of an establishment named “Fat Man’s Bar”, located approximately one-half block from the liquor store. The man stated that he had heard about the shooting and that two black men who looked “suspicious” had just entered the Fat Man’s Bar.
Officer Morris drove back to the bar, called for additional officers, and entered the establishment. The citizen who had stopped Officer Morris also entered and pointed out defendant and his companion. Without ever asking why the man believed defendant and his companion to be suspicious and without himself making any inquiry or observation of the two men, Officer Morris frisked defendant and his friend. The police officer found and removed a loaded .32 caliber revolver from defendant’s waistband. The other man had ho weapon. The two suspects were taken to the hospital where the liquor store owner was being treated; he stated that the men were not the ones who had attempted to rob him.
Defendant pleaded guilty to attempted felonious possession of a weapon after his motion to suppress was denied.
The seminal case in the area of stop-and-frisk is, of course, Terry v Ohio (392 US 1). There, the Supreme Court upheld the validity of a stop-and-frisk when “the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” (Id., at p 21.) The court added: “This demand for specificity in the information upon which police action is predicated is the central teaching of this Court’s Fourth Amendment jurisprudence.” (Id., at p 21, n 18.) Manifestly, the basis for deter *54 mining the propriety of the pat down is the officer’s personal knowledge of the circumstances, evaluated “in light of his [or her] experience” (id., at p 30; see id., at pp 5-7, 20, 22-23, 27, 28).
This focus on the officer’s personal observation and experience has been recognized in this court’s analysis of stop and-frisk situations. Thus, in People v Benjamin (51 NY2d 267, 270-271), it was noted that a mere anonymous tip of “men with guns” was insufficient to justify a pat down, but that the observations of the experienced officer when he arrived at the scene, in conjunction with the anonymous information, were such as would justify the frisk. In People v Klass (55 NY2d 821), two officers on foot patrol were approached by an unidentified person who described a man with a gun in the hallway of an adjacent building. The officers immediately ran into the building and found Klass, who matched the description just received. Only after Klass refused to give his name or an explanation for his presence did the officers frisk him, thereby discovering a gun. Implicit in this court’s affirmance was the recognition that, although initially acting on secondhand information, the officers had articulable knowledge of circumstances tending to support a reasonable suspicion that Klass was dangerous.
In the present case, the police officer had no knowledge of anything to suggest that defendant possessed a firearm or otherwise posed a threat to the officer’s safety. The citizen’s report that two men were suspicious, without more, does not provide adequate grounds for a frisk. Indeed, whether a person is “suspicious” is the ultimate determination that is to be reached by the officer on the basis of his or her own observations and experience. A frisk would not be justifiable if supported by only the officer’s conclusory statement that the subject looked suspicious; so, too, the infirmity rising from the absence of articulable facts is compounded when the officer relies on an inexperienced lay person’s conclusion that is not grounded on any objective factual elaboration.
In so holding, the court is cognizant of the holdings in Adams v Williams (407 US 143) and People v Moore (32 NY2d 67, cert den 414 US 1011). Critical to the decisions in *55 both those cases was the relevant content and apparent reliability of the information received by the police. In Adams, the officer was approached by an informant personally known to him and from whom he had obtained tips previously. In addition, the information was immediately verifiable at the scene. Notably, the officer’s suspicions were further aroused when the defendant rolled down his car’s window, rather than opening the door as requested by the officer. Similarly, in Moore, the information that the defendant possessed a gun was apparently quite reliable, coming from a man who claimed to be her husband and who was being taken to the police station after brandishing a knife in culmination of a three-day quarrel. These cases require that, before stopping and frisking an individual, the officer must have reliable knowledge of sufficient facts to justify the frisk (see Adams v Williams, supra; cf. People v Green, 35 NY2d 193; People v Moore, supra). The tip here lacked any indicia of reliability and was totally subjective, nonparticularized and conclusory in content. Consequently, the circumstances “require [d] further investigation before a forcible stop of a suspect would be authorized” (Adams v Williams, supra, at p 147).
Accordingly, the order of the Appellate Division should be reversed, the motion to suppress granted, and the indictment dismissed.