Fuchsberg, J.
(dissenting). On the facts in this case, as to which there can be no “real controversy” (Goncalves v Regent Int. Hotels, 58 NY2d 206, 218), the “mixed question of law and fact” concept is simply out of place. Rather, as the record here ineluctably dictates, denial of the motion to suppress the loaded gun of whose unlawful possession the defendant has been charged was mandated as a matter of law. My vote, therefore, must be to reverse.
This I say holding steadfast to the proposition that “one of our most hallowed rights — the ‘right of the people to be secure in their persons * * * against unreasonable searches and seizures’ ” — is a keystone of individual privacy and personal responsibility (People v De Bour, 40 NY2d 210, 227 [my dissenting opn]; NY Const, art I, § 12; US Const, 4th Arndt; see, also, e.g., People v Carrasquillo, 54 NY2d 248; People v Sobotker, 43 NY2d 559; People v Carney, 58 NY2d 51, 55 [my concurring opn]; People v Kinlock, 43 NY2d 832, 834 [my dissenting opn]; People v McLaurin, 43 NY2d 902, 904 [my dissenting opn]).
*909 But, as often has been noted, in promoting this libertarian ideal and, no doubt, as part of the price for acceptance of its role as model, the Nation’s founding fathers struck a balance at a middle ground which, when police behavior is justified, respects society’s interest in law enforcement as well. If we are to be true to this equation, in my view the police action in the present case must be upheld (People v De Bour, supra, at p 227, citing Brinegar v United States, 338 US 160, 176). The undisputable facts tell us why.[1]
In the early evening of February 28, 1980, pursuant to a Federal search warrant for specified drugs and a revolver, members of the New York City Police Department went to a second floor apartment of a “six or seven” ktory residential building in Manhattan. After gaining access to the apartment, where the record shows that the police had occasion to make prior arrests, they found the drugs described in the warrant. The gun, however, was not there.
While the officers were still on the premises, a buzzer rang in the apartment. This signaled that someone in the entranceway to the building at its street level desired admission. One of the officers responded by pressing a button, the conventional means by which a person in the apartment could release the lock on the building’s door so that a caller could enter. Within the brief time that one normally would expect it to take to reach the apartment from the entranceway, a man emerged from the only stairwell door opening onto the second floor hallway. This door was about eight feet from the entrance to the apartment, of which there were only two on that floor. No one else arrived at the second floor during this interval, either from the stairway or from the building elevator, from which a door also opened on this floor. In toto, then, there were but four doors opening onto the second floor hallway, one from the stairwell, one from the elevator and one from each of the two apartments.
As the defendant stepped through the stairwell door, two officers, stationed in the hallway, immediately noticed that *910 the man coming through the stairwell door was carrying a brown leather bag in his left hand. This they recognized was of a type commonly used, even by police officers, to carry a gun. The officers, without drawing or exhibiting their own weapons, immediately identified themselves, whereupon defendant responded by turning away. The police then reached for the bag, which, after a short struggle, they succeeded in seizing, whereupon they found that it indeed contained a loaded revolver.
The circumstances in which the police found themselves at the time of the seizure are worth recapping. The apartment to which the warrant had directed them was one which, to their knowledge, had been the locus of prior arrests. The warrant itself indicated that the magistrate who issued it had made a judicial finding of probable cause to believe that its execution would unearth not only drugs, but a gun associated with the use of these premises. The magistrate’s findings having been corroborated as to the drugs, but the gun having not yet been discovered, it is difficult to comprehend how even the greenest of “rookies” on the police force could fail to be conscious of the real possibility that, if the gun was in fact not in the apartment, it was in the possession of one of the apartment’s habitus.
Consequently, when the apartment buzzer rang, the police, in the exercise of ordinary prudence, could not fail to assume that, unless the buzzer had been sounded mistakenly by one who was on his way to another part of the building, the caller might very well be the habitué who carried the gun. So, when a man exited through the second story stairwell door within the normal time it would take one who was buzzed in to come up the stairs, the possibility that the signaling of the apartment had been a mistake or that the one who had done the signaling was anyone but the person who had exited from the stairwell was all but gone. At this juncture, when the officers, in addition, saw the man was toting the kind of bag frequently used to carry a handgun, it would have been both an abuse of their duty as policemen as well as an affront to common sense for them to have failed to take steps to avoid the risk of having *911 to determine whether the suspect or the officers were quicker on the draw.[2]
It is to be remembered that in this case we are not dealing with a trial, where guilt or innocence is to be decided. Then, of course, a defendant must be given the benefit of any reasonable doubt, and, therefore, if the proof is consistent with innocence as well as guilt, the defendant must be acquitted. For, at that point in a criminal prosecution, if the view consistent with innocence and the view consistent with guilt are both reasonable, the People must lose (e.g., People v Montanez, 41 NY2d 53, 57).
But, at a suppression hearing, the question merely is whether the police acted reasonably under the circumstances. Thus, for such purposes, if there are two possible views as to whether a suspect possesses an illegal weapon, if both views are “reasonable”, i.e., objectively justifiable by the facts known to the officer at the time, the officer is free to act on the view consistent with guilt rather than innocence (People v Benjamin, 51 NY2d 267,271 [radio run advising police of man with gun; upon reaching the stated location, defendant, one of a crowd of 30, without more, in stepping back when the police approached, reached with empty hands to rear of waistband; held, officer does not have to “await the glint of steel before he can act to preserve his safety”]).
The confusion I find in the dispositions below becomes even more apparent when we realize that, at the time the gun was seized, though defendant’s freedom of movement to this extent was curtailed, he was not subjected to a full-blown search of his body of clothing. Nor was he put through a protective frisk, which would include a pat-down of his clothing. Instead, intrusion was limited to securing possession of the bag which the police, as we have seen, *912 reasonably believed contained a deadly weapon. Since it did, however, partake of the character of a stop and frisk, giving it that full due, all that was required to justify it was a finding “that the officers could reasonably suspect that they were in danger of physical injury and that defendant posed a threat to their safety” (People v Chestnut, 51 NY2d 14, 21, cert den 449 US 1018; emphasis added).
In the present case, for instance, the intrusive police conduct did not rise to the level of an arrest (People v Chestnut, supra, at p 20 [frisk accomplished by ordering suspects to lie on ground as aid to stop and frisk justified by “reasonable suspicion”]). It follows that the analysis based, as it was in the courts below, on the probable cause to arrest standard was, to say the least, awry.
In fine, because, as a matter of law, the officers acted upon a reasonable suspicion in a legally permissible manner to insure their own safety, the gun they recovered from the defendant should not have been suppressed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur; Judge Fuchsberg dissents and votes to reverse in an opinion.
Order affirmed in a memorandum.

. On argument of this appeal, defendant’s counsel conceded that there is no factual dispute.

. Although not necessary for a determination that the officers, as a matter of law, had more than good reason to suspect that defendant was carrying a gun, the record, in addition, discloses that, when confronted by the police after emerging from the stairwell, the suspect immediately shifted the relationship between his hands and the bag. While the suppression Judge, in what has all the earmarks of a cursory, delivered-from-the-Bench ruling, made no finding on this matter one way or the other, the record tells us that one of the officers, who were the only two witnesses, testified that the suspect “had a bag in his left hand” and that “his two hands came together”, while the other described how he took the bag out of defendant’s “hands” when defendant’s “left arm” was raised with the case in it. It is odd, therefore, that the majority in the 3-to-2 affirmance at the Appellate Division was to say that “the suppression court rejected this testimony”.