◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALLEN DAVIS, Appellant. — Judgment of the Supreme Court, Bronx County (Joseph Cohen,

J., at motion to suppress and plea), rendered June 3, 1981, convicting defendant of the crime of criminal possession of a weapon in the third degree, an armed violent felony offense, and sentencing him to a definite term of one year, affirmed. ¶ The facts are fairly stated in the dissenting memorandum of our brother Milonas. The sole issue before us is whether circumstances leading to the discovery of the weapon, the possession of which resulted in defendant's plea of guilty, came about from an unreasonable intrusion on defendant's right of privacy. ¶ The moped on which defendant was a passenger had no license plates. Thus, it is plain that the stop was not of a vehicle "arbitrarily chosen from the stream of traffic on a public highway only because of the unusual but irrelevant appearance of the vehicle, solely to examine the [operator's] license and registration, or to inspect the vehicle for possible equipment violations" (*People v Ingle,* 36 NY2d 413, 414). The fact that defendant was carrying a white plastic shopping bag was, under the circumstances, "sufficient to arouse the officers' interest" (*People v De Bour,* 40 NY2d 210, 220). Everything which followed heightened that interest, with the ultimate discovery of the weapon. Officer Feliciano inquired of defendant what he was carrying in the white plastic bag. While defendant could have elected to remain silent (*People v Howard,* 50 NY2d 583, cert den 449 US 1023), he chose not to do so. Not only did he inform Feliciano that the bag contained blue pants, but, to prove his point, he withdrew the pants from the bag. At that point Feliciano noticed the bulge in the bottom of the bag as though the bag were weighted down. Feliciano then drew his weapon, a clear objective indication that he conceived the situation a dangerous one. His instruction to defendant to place the bag on the ground and his subsequent search of the bag followed. Clearly, his initial interest, heightened by the questioning which followed and defendant's response thereto, coupled with the condition of the bag after the pants had been removed, had ripened into a full-blown reasonable suspicion that defendant possessed a weapon, a suspicion which he was duty bound to explore. In so doing he intruded on defendant's privacy only to the extent warranted by the circumstances. Since the intrusion expanded only as required by the rapidly moving events of a street encounter, we find that the hearing court was justified in denying suppression of the weapon. Concur — Sullivan, J. P., Ross and Bloom, JJ.

Fein and Milonas, JJ., dissent in a memorandum by Milonas, J., as follows: In my opinion, the order being appealed herein should be reversed, the motion to suppress granted and the indictment dismissed. ¶ At approximately 2:30 A.M. on August 13, 1980, Police Officer Jose Feliciano and his partner, Officer David Schulrick, were on motor patrol on Burnside Avenue in The Bronx when they observed a moped which was without license plates. There were two persons on the moped, the driver and defendant Allen Davis, who was a passenger. Although the officers initially stopped the vehicle for the purpose of issuing a summons, they decided to detain the driver and Davis after both men failed to produce identification of any sort. Davis was then asked about the contents of the white plastic shopping bag which he was carrying in his right hand, and he replied, "a pair of pants, pair of blue pants." He thereupon pulled out a pair of pants, at which point Officer Feliciano purportedly noticed a bulge at the bottom of the bag as if it were "weighted down". Drawing his gun, Officer Feliciano directed Davis to place the bag on the ground. Davis complied and tossed the pants on top of the bag. The weapon still in his hand, Officer Feliciano removed the pants and looked into the bag where he found a .45 caliber automatic pistol. Davis was then put under arrest. ¶ It is undisputed that since the moped lacked license plates, the police in the instant matter were warranted in stopping the vehicle in order to issue a summons to the driver. However, the officers had no other information which could conceivably

lead them to believe that any other violation of law was involved. There was no radio run or tip, anonymous or otherwise, that either the driver or the defendant had committed, or were about to commit, a crime. The police had no basis for concluding that the moped was stolen and, as admitted by Officer Feliciano at the suppression hearing, if such was indeed a possibility, they could have determined on the spot whether the vehicle had been reported stolen. They did not even ascertain the moped's identification number until they had removed it to the station house. Thus, at the time Officer Feliciano approached the vehicle, he had no fear for his safety nor any ground to fear for his safety. Yet, he proceeded to question defendant, not the driver of the moped but simply a passenger, regarding the contents of a shopping bag which he was carrying. ¶ In *People v De Bour* (40 NY2d 210), the Court of Appeals held that a police officer may approach a private citizen on the street for the purpose of requesting information even in the absence of any concrete information of criminality. Similarly, the individual to whom the police officer addresses an inquiry has a constitutional right not to respond and may either remain silent or simply walk away. (*People v Howard,* 50 NY2d 583, cert den 449 US 1023.) Assuming, therefore, that Officer Feliciano was justified in asking defendant what he had in the bag, there was nothing that authorized any greater level of intrusion. The mere fact that Davis may have voluntarily stated that he had pants in the bag and then removed those pants certainly did not provide a reasonable basis for a search of the bag. The law is clear that: "Absent other circumstances evoking suspicion the observation of a mere bulge or heavy object in a pocket does not impel a reasonable conclusion that the person is armed." (*People v Williams,* 79 AD2d 147, 151.) As the Court of Appeals explained in *People v Stewart* (41 NY2d 65, 69), "a bulge in the pocket, unlike a waistband bulge, could be caused by any number of innocuous objects." If anything, this reasoning is even more applicable in the case of a shopping bag, which could be expected to contain any variety of items creating a bulge or causing the bag to appear "weighted down". Unless there exist facts providing the police with reasonable grounds to believe that a person is armed or dangerous, they may not constitutionally undertake either a frisk or a search for a weapon. (See *People v Carney,* 58 NY2d 51.) Consequently, the search which occurred here was unreasonable as a matter of law, and the order of the Supreme Court should be reversed.