People v Bowman (2023 NY Slip Op 06494)

People v Bowman

2023 NY Slip Op 06494

Decided on December 19, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 19, 2023

Before: Manzanet-Daniels, J.P., Kapnick, Oing, Pitt-Burke, Higgitt, JJ. 

Ind. No. 3064/17 Appeal No. 1059 Case No. 2019-2015 

[*1]The People of the State of New York, Respondent,
v
Tyron Bowman, Defendant-Appellant.

Twyla Carter, The Legal Aid Society, New York (Danielle A. Bernstein of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Jennifer Mitchell of counsel), for respondent.

Judgment, Supreme Court, New York County (Gilbert C. Hong, J. at suppression hearing; Juan M. Merchan, J. at plea and sentencing), rendered January 8, 2019, convicting defendant of criminal possession of a weapon in the second degree, and sentencing him, as a second violent felony offender, to a term of seven years, unanimously affirmed.
The court properly denied defendant's suppression motion. There is no basis for disturbing the court's credibility determinations. The arresting officer testified that he was on patrol in a public park, where a crowd had gathered to commemorate the anniversary of someone's death. As the crowd was dispersing, the officer observed defendant pass directly in front of him at a distance of two to three feet, walking from the officer's left to his right. As defendant passed, the officer observed an L-shaped bulge in the right back pocket of defendant's jeans. After noticing the bulge, the officer continued to observe defendant for approximately 30 seconds to a minute as defendant slowly walked away from him. The officer testified that the bulge strongly resembled the very distinct outline and shape of a firearm, with the barrel pointed downward and the grip going horizontally along the top of defendant's pocket. The officer further observed that defendant's pants were sagging lower on the right side, where the bulge was, than on their left side, indicative of the object's weight, and that with each step that defendant took, the L-shaped outline of the object protruded against the jean pocket. Based on these observations, the officer believed that the object was a firearm, and thereafter conducted a pat-down of the bulge, confirmed that the object was a pistol, and effectuated defendant's arrest.
In assessing the propriety of a level-three stop and frisk of a defendant for a suspected firearm the court must consider three factors: First, whether there was proof of a describable object or of describable conduct that provides a reasonable basis for the police offer's belief that the defendant had a gun in his possession (People v Prochilo, 41 NY2d 759, 761-762 [1977]).[FN1] Generally, an unidentifiable bulge — specifically, a bulge that an officer does not identify as being that of a firearm - in a defendant's pocket is not by itself sufficient proof that the defendant possesses a firearm so as to justify a frisk (see People v Williams, 79 AD2d 147, 150 [1st Dept 1981] [suppression warranted where officer's observation of three-to-four inch bulge in the defendant's overcoat pocket, without specifically identifying the shape of a pistol, "lacks 'proof of a describable object' from which the officer could conclude that the defendant had a gun. All [the officer] could see was a bulge in the defendant's pocket"]; see also Prochilo, 41 NY2d at 763 [reversing and suppressing in Bernard, one of the threestop and frisk cases at issue, where officer observed a "heavy object" slide in defendant's jacket pocket, stating that, prior to [*2]the frisk, "[the officer] could not tell what the heavy object appeared to be by looking at the pocket, and that until he had reached into the pocket he had not seen 'any part of what appeared to be a gun, a handle, a barrel, or anything like that'"]).
A stop and frisk for a firearm is justifiable in cases where the officer identifies the outline of a pistol in the defendant's pocket (see Prochilo, 41 NY2d at 762 [upholding denial of suppression in Prochilo matter where officer "observed through the defendant's tight outer clothing the complete outline of a revolver at his side" and in the Goings matter where officer, from approximately 20 feet away, observed "a bulge in the defendant's right-hand jacket pocket which struck him immediately as having 'the configuration of a handgun' [or] the 'outline of a gun'"]; see also People v Wright, 253 AD2d 720, 720 [1st Dept 1998], lv denied 92 NY2d 986 [1998] [no suppression where the "[d]efendant was seen by one of the arresting officers with his pants pocket weighed down by an 'L-shaped' object, which the arresting officer believed to be the outline of a gun"]). Here, the officer described in detail the distinct pistol shape of the bulge in defendant's jeans pocket, including the orientation of the barrel and pistol grip, that he observed over the course of approximately a minute. Pursuant to the first Prochilo factor, these observations constituted proof of a "describable object" that "provide[d] a reasonable basis for the police officer's belief that the defendant had a gun in his possession," justifying the officer's immediate frisk of defendant's pocket (Prochilo, 41 NY2d at 761).
The second Prochilo factor is whether the manner of the officer's approach to the defendant and the seizure of the gun was reasonable under the circumstances (41 NY2d at 761). Following the observation of a gun-shaped bulge in a defendant's pocket, an officer is generally justified in conducting a minimally invasive pat-down of the bulge to confirm that it is indeed a firearm (see id., at 762; see also People v Wright, 253 AD2d at 720). Here, after observing the pistol-shaped bulge in defendant's right rear jeans pocket, the officer conducted a pat-down of the bulge and confirmed that it was a gun. Under controlling law, this intrusion was reasonable, notwithstanding the officer's testimony that he did not fear for his own or anyone else's safety until after the frisk, especially where the events took place at night in a public park with several hundred people in the vicinity (see People v Moore, 32 NY2d 67, 72 [1973], cert denied 414 US 1011 [1973]; People v Herrera, 76 AD3d 891, 894 [1st Dept 2010], affd 16 NY3d 881 [2011]). Upon confirming that the object was a firearm, the officer had probable cause to effectuate an arrest and reasonably tackled defendant to the ground.
The third, and final, Prochilo factor is whether there "was evidence of probative worth that there had been a pretext stop and frisk or that the police [*3]were otherwise motivated by improper or irrelevant purpose" (41 NY2d at 761-762). Defendant does not argue, and we do not find, that the stop was pretextual or that the officer was motivated by an improper or irrelevant purpose.
We have considered defendant's remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 19, 2023

Footnotes

Footnote 1: People v Prochilo is a decision addressing three separate appeals in which the defendants sought to suppress a handgun taken by the police: (1) People v Prochilo, (2) People v Goings and (3) People v Bernard.