People v Walker (2025 NY Slip Op 01194)

People v Walker

2025 NY Slip Op 01194

Decided on March 04, 2025

Appellate Division, First Department

MENDEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 04, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Peter H. Moulton Manuel Mendez Julio Rodriguez III LlinÉt M. Rosado

Index No. 70307/22|Appeal No. 3056|Case No. 2022-03611|

[*1]The People of the State of New York, Respondent,
v
Jabon J. Walker, Defendant-Appellant.

Defendant appeals from a judgment of the Supreme Court, New York County (Robert Mandelbaum J., at suppression hearing; Neil Ross J., James Burke J., at plea and sentencing), rendered August 16, 2022, convicting defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree, and sentencing him, as a second felony offender, to a term of three years.

Twyla Carter, The Legal Aid Society, New York (Stephen Nemec of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (David E. A. Crowley, Alan Gadlin and Jennifer Covais of counsel), for respondent.

MENDEZ, J. 

Defendant pleaded guilty to attempted criminal possession of a weapon in the second degree after the hearing court denied his motion to suppress. On appeal, defendant argues that hearing court erred in denying his motion to suppress the weapon recovered by the police because he was unlawfully seized. We agree.
At a Mapp/Dunaway hearing, Officer Delia, the arresting officer, testified that on January 1, 2022, at approximately 2:09 a.m., he, Officer Ahmed, and Sergeant Maguire were in uniform on patrol in an unmarked motor vehicle on Seventh Avenue where it intersects with West 131st Street. There was a light rain. Officer Ahmed was the driver and Officer Delia sat in the front passenger seat. Officer Delia observed defendant crossing the street from the southwest corner of 131st Street and Seventh Avenue to the southeast corner of 131st street. As he walked across the street defendant was holding two to three glass bottles of alcohol in his left arm, one bearing a "Hennessy" label. The bottles were unsealed, half-full, and appeared to be capped and closed. Officer Delia suspected that the defendant was in violation of New York's open container law, although he did not see defendant drink from the bottles and did not see that any of the bottles were open.
The officers drove past the intersection, continued southbound on Seventh Avenue to West 130th Street, made a U-turn, and approached the intersection where defendant was still crossing. When their vehicle was a few feet away from defendant, Officer Delia noticed that compared to the left side of his jacket, defendant's right jacket pocket appeared to have a heavy-weighted object. The officer noticed that the pocket was stiff, ended out, and pointed to the ground. Officer Delia concluded that the object was not a cellphone, wallet, keys, or similar object because of its heavy appearance. Although he did not say that the object resembled the outline of a firearm, he suspected the object was a gun.
Officer Delia exited the car to approach defendant, "to interact with him" and to enquire about the bottles of alcohol. He called out to defendant, repeatedly saying, "Yo, come over here," but defendant continued to walk away and, as he walked, repeatedly looked over his shoulder at Officer Delia. As Officer Delia followed, he shined his flashlight in defendant's general direction, and [*2]at that point the defendant began to run. Defendant ran across Seventh Avenue and jumped over the median. Officer Delia and the other officers in the vehicle immediately gave chase and caught up to him within a few seconds.
Sergeant Maguire tackled defendant to the ground, causing the bottles defendant was holding in his arm to shatter under him. When defendant tried to get back on his feet, Officer Delia tackled him again and wrapped his arms around him. Officer Delia recovered a gun from between defendant's body and the ground near defendant's waistband area, and defendant was promptly arrested. Officer Delia did not see any alcohol spill from the bottles defendant was holding as he ran.
Defendant moved to suppress the weapon recovered as the fruit of his unlawful seizure. He argued that his conduct was innocuous, not suspicious, and did not justify the police encounter. He argued that Officer Delia never saw him drink from the bottles of alcohol, and transporting unsealed but closed bottles of alcohol is not a violation of the open container law. Defendant further argued that the level of the encounter did not justify a forcible stop under People v DeBour (40 NY2d 210 [1976]), and that Officer Delia's observation of an apparent heavy object in defendant's jacket pocket was insufficient to give rise to a reasonable suspicion that he possessed a gun. Finally, defendant argued that because the initial encounter was not lawful, his flight was insufficient to raise the level of suspicion.
The People opposed defendant's motion to suppress, arguing that the encounter was justified at its inception because it was reasonable for the police to infer that the defendant had violated the open container law when Officer Delia saw him carrying half-full bottles of alcohol with broken seals. The People argued that Officer Delia's level of suspicion increased when he saw the bulge in the right pocket of defendant's jacket, and that the officers were justified in pursuing defendant because his flight added the reasonable suspicion necessary to justify a forcible stop and detention under the third level of DeBour. They further argued that defendant's initial actions—ignoring the police and continuing to walk away—showed that he was not seized because he felt free to leave.
The court denied the motion to suppress. The court reasoned that Officer Delia had reasonable suspicion, if not probable cause, to believe that defendant had violated the open container law because he saw defendant crossing the street, holding two or three glass bottles, one with a Hennessy label on it, that were only half-full and thereby no longer closed and sealed. The court concluded that the unsealed bottles qualified as open containers, triggering a rebuttable presumption that possession implies an intent to drink in public unlawfully. The court further found that shining his flashlight on the heavy-weighted area of defendant's jacket was a factor in his level of suspicion. Further[*3], the court found Officer Delia's level of suspicion that criminal activity was at hand became elevated when defendant took flight.
It is well established that when evaluating police action during street encounters, the court must determine whether it was justified at its inception and reasonably related in scope to the circumstances at the time (DeBour, 40 NY2d at 215). The Court of Appeals in DeBour set forth a graduated four-level test to determine whether police-initiated street encounters are lawful (id. at 223). At a level-one street encounter, a police officer is permitted to approach and request information from an individual (id.). This requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality (id.). The brevity of the encounter and the absence of harassment or intimidation will be relevant in determining whether a police-initiated encounter is a mere request for information (People v Hollman, 79 NY2d 181, 190 [1992]). Level two, a common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot (DeBour, 40 NY2d at 223; Hollman, 79 NY2d at 184). Level three allows an officer to forcibly stop and detain an individual and requires a reasonable suspicion that the individual has committed, is committing, or is about to commit a felony or misdemeanor (Hollman, 79 NY2d at 184). Level four occurs when an individual is arrested and requires probable cause to believe that the individual has committed a crime. Each progressive level authorizes greater police intrusion and consequently requires escalating suspicion by the officer (id.at 185). 
Administrative Code of the City of New York § 10-125, the open container law, prohibits alcohol consumption in public places. It states, "No person shall drink or consume an alcoholic beverage, or possess, with intent to drink or consume, an open container containing an alcoholic beverage in any public place" (Administrative Code of City of NY § 10-125[b]). The statute further provides that possession of an open container "shall create a rebuttable presumption that such person did intend to consume the contents thereof" (Administrative Code of City of NY § 10-125[c]).
When accompanied by factors lacking reasonable innocent interpretation, the sight of open containers of alcohol provides reasonable cause to believe that the individuals possessing the bottles intended to consume them (see People v Basono, 122 AD3d 553, 553 [1st Dept 2014], lv denied 25 NY3d 1069 [2015] [defendant's behavior lacked any reasonable innocent explanation and his conduct established reasonable cause to believe that he possessed an open container of alcohol with the intent to consume it in public when defendant, who was congregating with a group of individuals who had cups and open bottles of alcohol in their possession or nearby, attempted to cover the cups with his hands and kick away the bottles when [*4]officers approached the group and then fled]; see also People v Canty, 55 AD3d 330-331 [1st Dept 2008], lv denied 11 NY3d 896 [2008] [pursuit and arrest justified where the officer saw defendant drinking from "what the officer recognized to be a beer bottle, in a public place"]; see People v Brothwell, 261 AD2d 232, 234 [1st Dept 1999], lv denied 93 NY2d 1026 [1999] [reasonable to conclude that defendant was drinking alcohol in public where he was holding "a partially concealed open bottle resembling a beer bottle" and held the bottle in a manner that "suggested that the bottle was not empty"]). In contrast, simple possession of a closed bottle of alcohol, even when unsealed, may be equally suggestive of innocent and lawful behavior (see People v Lee, 58, NY2d 491, 496 [1983] ["it cannot be presumed that every opening or unsealing is for the purpose. . . of direct human consumption in a public place."]).
The circumstances here do not support a presumption that the defendant intended to consume the alcohol he was carrying; on the contrary, they point to the conclusion that his actions were innocent and lawful. The bottles that the defendant was carrying were all closed and capped, and therefore were not open containers, even if they were unsealed. Additionally, defendant was not congregating, but was crossing an intersection.
Transporting closed bottles is a legal activity which, without more, does not give rise to a presumption of intent to consume, or a founded suspicion of criminal activity under DeBour. Moreover, the fact that it was raining makes it less likely that the defendant intended to congregate outside and remain exposed to the elements while consuming alcohol. Critically, the officers never saw defendant drink from any of the bottles. Therefore, these facts did not give rise to a presumption that defendant intended to consume alcohol in public in violation of the statute, and Officer Delia, at most, acquired the right to approach defendant to request information.
The heavy-weighted object in defendant's right jacket pocket could not have justified defendant's stop and detention because, "absent other circumstances evoking suspicion, indicative of or referable to the possession of a handgun, the observation of a mere bulge or heavy object in a pocket does not imply a reasonable conclusion that the person is armed" (People v Williams, 79 AD2d 147, 151 [1st Dept, 1981]). "A police officer must show that the object or appearance thereof which is the focus of his attention resembled a gun" (id. at 152). Thus, absent a showing of anything other than a mere bulge or heavy object in defendant's pocket, Officer Delia could not have acquired a level of suspicion sufficient to detain the defendant (see People v Diallo, 213 AD3d 472, [1st Dept 2023]; People v Crawford, 89 AD3d 422, 423 [1st Dept 2011]).
In DeBour, the Court of Appeals distinguished a pocket bulge from a waistband bulge. It found, "the location of the bulge [to be] noteworthy [*5]because unlike a pocket bulge which could be caused by any number of innocuous objects, a waistband bulge is [a] telltale sign of a weapon" (DeBour 40 NY2d at 221). Here, Officer Delia stated that he saw a heavy-weighted object in defendant's jacket pocket, not in his waistband. However, a mere heavy object in defendant's pocket, regardless of what Officer Delia suspected the object to be was insufficient to establish a founded or a reasonable suspicion that criminal activity was afoot. Accordingly, even based upon these additional facts, Officer Delia's observations did not rise to a level sufficient to stop and detain defendant. 
Officer Delia stated that his suspicion was elevated by defendant's subsequent flight. Police pursuit of an individual "significantly impede[s]" the person's freedom of movement is equivalent to a level three encounter under DeBour, and must be justified by reasonable suspicion that a crime has been, is being, or is about to be committed (People v Holmes, 81 NY2d 1056, 1057-1058 [1993], quoting People v Martinez, 80 NY2d 444, 447 [1992]). Police pursuit must be justified at the encounter's inception, and "flight alone, even if accompanied by equivocal circumstances that would justify a police request for information, does not establish reasonable suspicion of criminality" (People v Reyes, 69 AD3d 523, 525—526 [1st Dept 2010], lv dismissed 15 NY3d 863 [2010]; see also People v Bilal, 170 AD3d 83, 86 [1st Dept 2019]). Flight is insufficient to escalate an encounter when no other circumstances of criminality are present (People v Howard, 50 NY2d 588 [1980]). Here, there were no other circumstances of criminality present. Defendant was not in violation of the open container law, and the presence of an unidentifiable heavy-weighted object in his jacket pocket did not provide Officer Delia with sufficient information to conclude that the defendant possessed a gun or was engaged in a crime (see People v Diallo, 213 AD3d at 472 ["presence of an unidentifiable object in his pocket and nervousness in the presence of a marked police van, did not create reasonable suspicion, because there was no founded suspicion of criminality before the flight"]; Crawford, 89 AD3d at 423 ["oblong-shaped object" that created a bulge and looked heavy in the defendant's pocket "did not raise suspicion that he had a gun or was otherwise involved in a crime"]).
The officers' pursuit of defendant was based on facts that did not give rise to a reasonable suspicion that criminality was present, especially because Officer Delia never observed the outline of a gun in defendant's jacket pocket. Therefore, defendant's subsequent flight when Officer Delia approached him did not justify his forcible stop and detention. Police may not seize incriminating evidence if they have no right to be where they were when they saw it (see People v Messano, 41 NY3d 228, 233 [2024]). The Officer's approach and pursuit of defendant was unjustified, and the weapon should [*6]have been suppressed.
Accordingly, the judgment of the Supreme Court, New York County (Robert Mandelbaum J., at suppression hearing; Neil Ross J., James Burke J., plea and at sentencing), rendered August 16, 2022, convicting defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree, and sentencing him, as a second felony offender, to a term of three years, should be reversed, on the law and the facts, defendant's motion to suppress granted, the judgment of conviction vacated, and the indictment dismissed.
Judgment, Supreme Court, New York County (Robert Mandelbaum J., at suppression hearing; Neil Ross J., James Burke J., at sentencing), reversed, on the law and the facts, defendant's motion to suppress granted, the judgment of conviction vacated, and the indictment dismissed.
Opinion by Mendez, J. All concur.
Manzanet, J.P., Moulton, Mendez, Rodriquez, Rosado, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 4, 2025