The People of the State of New York, Appellant, v Carlos Sterling and Hector Cedeno, Respondents.

First Department, July 11, 1978

## APPEARANCES OF COUNSEL

*Mark Dwyer* of counsel *(Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney)*, for appellant.

*August Agate* of counsel *(Ressler & Agate,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J.

The People appeal from an order which granted defendants' motion to suppress weapons seized from them.

Carlos Sterling and Hector Cedeno were indicted separately and each charged with possession of a weapon in the third degree and criminal possession of a controlled substance in the sixth degree. A third individual, Frank Collado, arrested with Sterling and Cedeno, was separately indicted on other weapons possession charges.

On the evening of September 11, 1976, Detectives O'Shaughnessy and Shaw of the Street Crime Unit were patrolling in a medallion taxicab, when they received a radio communication that an unidentified caller had reported that a robbery was about to occur. The report stated that a number of men with guns were in a brown car, bearing license number 984VYI, at 107th Street and Amsterdam Avenue. The detectives drove to the intersection.

At the location they noticed a dark-colored car at one corner of the intersection, but, after inspection of the license plate, determined that the car was not the subject of the report. Then they spotted a brown car on 107th Street, parked away from the curb. Two men were standing in the gutter next to the car, and were apparently conversing with the car's occupants. The front seats were unoccupied.

Detective O'Shaughnessy exited from the cab and approached the car, while Detective Shaw slowly drove the taxi behind him. As O'Shaughnessy advanced toward the car he observed that the license number was 984BYI, identical to the reported license plate except for one letter. He also noticed two men in the car. When O'Shaughnessy was within one car length of the brown car, one of the men in the gutter, later identified as Frank Collado, spotted him and turned away toward the other man in the street, Alexander Pichardo. The two conversed momentarily, and then Collado moved toward the back of the car, while Pichardo walked toward O'Shaugh-

nessy. O'Shaughnessy saw Collado place both his hands in front of his body out of O'Shaughnessy's line of sight. The detective then took out his badge, placed his hand on his gun in his jacket pocket, and yelled to Collado, "Police, don't move."

Collado continued his furtive movements. O'Shaughnessy pulled his gun and yelled a second warning. O'Shaughnessy walked up to him, reached around Collado's waist, felt a gun, and removed it. Holding up the gun, O'Shaughnessy yelled "gun" to Shaw, who had exited from the cab after stopping it alongside the brown car. While O'Shaughnessy frisked Collado, Shaw frisked Pichardo and ordered the two occupants of the car, Sterling and Cedeno, to place their hands on the front seat. Sterling and Cedeno were then ordered out of the car and frisked by the officers, assisted by a newly arrived back-up team. The frisk of Sterling and Cedeno produced weapons and ammunition and they were arrested. Marihuana was subsequently discovered in the car by Shaw, when he drove the car to the station house.

After a joint suppression hearing, Trial Term found that the officers were justified in frisking Collado because of the potential danger suggested by his movements and his failure to heed the command of O'Shaughnessy. But the court granted the motions of Sterling and Cedeno to suppress because Collado's possession of a gun did not provide a "founded suspicion" that Sterling and Cedeno possessed guns.

■ "[A] police officer, in the absence of any concrete indication of criminality, may approach a private citizen on the street for the purpose of requesting information." (People v De Bour, 40 NY2d 210, 213.) His "right to request information while discharging his law enforcement duties will hinge on the manner and intensity of the interference, the gravity of the crime involved and the circumstances attending the encounter." (People v De Bour, supra, p 219.) In De Bour two officers on patrol at night stopped an individual to request identification after he had crossed from one side of a street to the other when he observed the officers' approach.

The United States Supreme Court has recognized "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." (Terry v Ohio, 392 US 1, 22.)

■ Where anonymous telephone information has been received "the proper analysis * * * is to examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion on the individual. Thus, the predicate established defines the scope of permissible police conduct" *(People v Stewart,* 41 NY2d 65, 66).

■ In the circumstances here, the officers had the right to approach Collado to request information, after receiving a tip, albeit anonymous, that men with guns were planning a robbery, and after confirming that a car matching the description given was at the designated location. *(Adams v Williams,* 407 US 143, 145; *United States v Unverzagt,* 424 F2d 396, 398.) Even at this juncture there was sufficient justification to frisk. (See *People v McLaurin,* 43 NY2d 902.) Once Collado ignored the command of Detective O'Shaughnessy not to move and began to act in a furtive manner, the risk to the police officer became aggravated. The more ominous the danger, the greater the justification to frisk.

Trial Term found (NYLJ, June 22, 1977, p 11, col 1) that "[a]lthough the seizure of the Collado gun might sufficiently confirm the original '911' message as to 'males with weapons' and provide a reasonable basis for further inquiry, an immediate search of the occupants of the car was not appropriate action." It seems to us that this finding ignored the officers' statutory rights and the realities of the situation.

CPL 140.50 authorizes police officers to stop an individual for an explanation of his conduct if the officers reasonably suspect that the individual is committing, has committed, or is about to commit a crime. The statute also provides that the police may frisk such an individual if they reasonably suspect that they are in danger of physical injury.

■ The police had cause to approach Sterling and Cedeno, based on the radio report and their own confirmation of the location of the car, its color, license plate number (except for one letter, easily confused by phonetic similarity), and the presence of men in the car. But with the discovery of the gun on Collado, who was in close proximity to the car, and who had been in apparent conversation with its occupants, the officers then had reason to believe that a crime was being committed or contemplated. The radio communication that the men were armed, now confirmed, at least as to Collado, would reasonably lead the police to believe that their lives

were in danger. Since "we recognize the authority of the police to stop a person and inquire concerning unusual street events we are required to recognize the hazards involved in this kind of public duty" *(People v Rivera,* 14 NY2d 441, 446).

"In the case of the self-protective search for weapons" a police officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *(Sibron v New York,* 392 US 40, 64.) Knowing that Collado had a gun, and having reason to believe that the men in the car were similarly armed, the officers were endowed by statute with the authority to frisk so as to ensure that the result of their inquiry would not be a hail of bullets.

Accordingly, the order of the Supreme Court, New York County (LEFF, J.), entered June 16, 1977, granting defendants' motions to suppress weapons, should be reversed, on the law and the facts, and the motions to suppress denied.

KUPFERMAN, J. P., LUPIANO, MARKEWICH and YESAWICH, JJ., concur.

Order, Supreme Court, New York County, entered on June 16, 1977, unanimously reversed, on the law and the facts, and the motions to suppress denied.