■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM SUSTR, Respondent.—Orders, Supreme Court, New York County, entered March 20, 1979, and May 2, 1979, unanimously reversed, on the law, the motion to suppress denied, the dismissal of the indictment charging defendant-respondent with criminal possession of a weapon vacated, and the case remanded to Supreme Court, New York County, for further proceedings. At approximately 5:20 P.M., November 16, 1978, a New York City Police Department 911 operator received a call that a light-haired white man wearing a silver jacket was standing on a specified corner, that he had a gun, and was "out to kill people." The substance of this message was transmitted at once to radio cars in the field, including an unmarked car containing the arresting officer and two colleagues, all in civilian dress. They proceeded to the area, leaving their car a block away from the corner, which they approached on foot. Just before they reached the corner, they saw defendant, one of a group standing there but the only one dressed in a silver jacket. The arresting officer advanced on defendant with gun and badge displayed, and defendant was patted once near his belt after being told to keep his hands out of his pockets. The outline of a gun was discovered in the process and defendant was asked what was there.[1] The answer: "A piece." A gun was removed from his person and he was arrested.[2] The trial court granted defendant's motion to suppress on the

1. No point was raised on this appeal concerning absence of *Miranda* warnings. In the circumstances, the admission made would add nothing to the case.

2. While the officers testified that no one else in the group was searched, other witnesses testified to what amounted to mass invasion of privacy by the police. We regard this as irrelevant, particularly in view of the suppression court's having credited the police version of what happened.

ground that defendant's constitutional rights had been violated, because defendant had not been observed engaging in criminal activity, nor were there exigent circumstances requiring immediate intrusive police action, and particularly that "sparse information derived from an unknown informer and the failure of the police to ascertain its accuracy and reliability before acting upon it does not give rise to even a reasonable suspicion for undertaking the frisk to which the defendant was subjected." We do not agree. There is a long line of cases from *Terry v Ohio* (392 US 1) down to *People v Santiago* (64 AD2d 355) the latter, in its exhaustive study, a virtual encyclopedia on the subject of arrests in gun cases, most of them being based on police observation as predicate to search and arrest. But this is a case based on information from an informer, whose reliability is as unknown as his identity. However, the basis for our holding that the frisk conducted by police in these circumstances was justified is found in *People v McLaurin* (43 NY2d 902, revg 56 AD2d 80, on the dissenting opn of Nunez, J., p 84.) The reasoning of that case fits the facts here found like a glove: "The proper analysis in cases of this nature is to examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion on the individual. *(People v Stewart* and *People v Williams,* 41 NY2d 65, 66; see, also, *People v De Bour* and *People v La Pene,* 40 NY2d 210.) Emergency telephone calls do not lend themselves to evaluation of the informer's veracity. Yet the police would be remiss in their duties if they failed to investigate a call concerning a gun *(People v Williams,* 52 AD2d 520, affd 41 NY2d 65). A police officer may act on the strength of a communication from a fellow officer and assume its reliability *(Whiteley v Warden,* 401 US 560, 568; *People v Horowitz,* 21 NY2d 55, 60). In this case, responding to the broadcast, the police encounter the defendant who matches the description given: [a light-haired white man wearing a silver jacket]. When the officers arrive, defendant is [at] the address provided by the caller. As the defendant matches the description provided, the officer may believe the defendant possesses a gun as reported, and that he is in danger. The officer can then make a limited search *(People v Taggart,* 20 NY2d 335, 337, cf. *People v La Pene, supra;* but see *People v Stroller,* 53 AD2d 816) not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence *(Sibron v New York,* 392 US 40, 63; CPL 140.50, subd 3). Whether or not a search or seizure is to be considered reasonable requires a weighing of the government's interest against the encroachment upon an individual's right to privacy and personal security *(People v Cantor, 36 NY2d 106, 111). Terry v Ohio* (392 US 1, 27) allows 'a reasonable search for weapons for the protection of the police officer, where he has reason to believe he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' The encounter occurred near midnight. Darkness prevented the officers from making the observation of a weapon outline which justified the 'pat down' in *People v Williams (supra).* The police acted prudently to insure their own safety." *(People v McLaurin,* 56 AD2d 80, 84.) The only difference between this case and Justice Nunez' dissent, adopted by the Court of Appeals as its own, lies in the description of defendant and of the location, as indicated in the excerpt by the matter in brackets. The motion to suppress should have been denied. Concur—Fein J. P., Sandler, Bloom, Markewich and Silverman, JJ.