THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
WILLIAM E. HAUSER, Appellant.

Fourth Department, May 27, 1981

APPEARANCES OF COUNSEL

*Sean Hill* for appellant.

*Edward C. Cosgrove, District Attorney (Timothy Harvey*
of counsel), for respondent.

OPINION OF THE COURT

SCHNEPP, J.

The main issue on this appeal is whether the pat-down
search conducted by the police deprived defendant of his
Fourth Amendment rights, requiring suppression of a
loaded handgun found on his person and his subsequent con-
fession. We hold that in the circumstance of this case the
search violated defendant's constitutional rights and that

County Court erred in denying defendant's suppression motions.

The relevant facts are as follows: At approximately 6:00 P.M. on February 23, 1970 James Clouden, a Buffalo police officer, while working a second job as a security officer for a store in Main Place Mall in downtown Buffalo, was approached by an individual known to him only as "John" who pointed out defendant and stated that he was wanted for questioning by the Homicide Bureau of the Buffalo Police Department which was "on the way over". Clouden then followed defendant through the mall and signaled to Erie County Deputy Sheriff Michael Battaglia, also off duty and working as a store security guard, who stopped defendant and informed him that an officer wanted to talk with him. Clouden and Battaglia identified themselves as police officers and, upon questioning, and being advised of the reason for the inquiry, defendant gave his name and stated that he had heard that homicide had been "looking for me for two weeks". Defendant said that he was willing to go to police headquarters. The trio proceeded a few feet on their way to a mall exit when Battaglia reached over and ran his hand across the front of defendant's jacket and felt the handle of a revolver. Clouden then removed a .38 caliber Smith & Wesson snub-nosed revolver from defendant's possession. Defendant was arrested for possession of the weapon and taken to police headquarters where shortly thereafter he confessed to the murder of Robert B. Powarski on February 1, 1970.

County Court denied defendant's motion to suppress the handgun and his subseqeunt statements made at the police station. The court concluded that defendant had been stopped pursuant to section 180-a of the Code of Criminal Procedure (now CPL 140.50); that Deputy Battaglia had reasonably suspected that he was in danger of life and limb; that there had been a lawful taking of defendant's gun; and that the gun was admissible at trial. Further, the court found that defendant's oral admissions and a written statement were voluntarily made and signed. After a jury trial defendant was convicted of felony murder, first degree manslaughter and three other felonies. He received concur-

rent sentences of imprisonment, the greatest being a term of 15 years to life for the felony murder count. Both the revolver and the confession were admitted into evidence at the trial.

On appeal defendant argues that he was subjected to an illegal search and seizure when Officer Clouden and Deputy Battaglia took a revolver from defendant's possession and that the revolver should have been suppressed. He further contends that the arrest that followed the seizure of the weapon was illegal and that his oral and written statements should have been suppressed as fruits of that illegal arrest.

Whether police conduct is labeled a "search", "frisk" or "pat-down" this action, however characterized, is a serious intrusion upon the sanctity of a person which must withstand review under Fourth Amendment standards. In evaluating the actions of the police officers, consideration must be given to the predicate for those actions and to whether the predicate justified the extent of the official intrusion on defendant *(People v Stewart,* 41 NY2d 65, 66; see *People v De Bour,* 40 NY2d 210, 222). The reasonableness of the intrusion depends upon an analysis of "(1) the nature and scope or severity of the interference with individual liberty, (2) the public interest served, and (3) the objective facts upon which the enforcement officer relied, in light of his knowledge and experience" *(People v Howard,* 50 NY2d 583, 589, cert den 449 US 1023). "[A] stop and frisk is a more obtrusive procedure than a mere request for information or a stop invoking the common-law right of inquiry, and as such normally must be founded on a reasonable suspicion that the particular person has committed or is about to commit a crime"; where no more than a common-law right to inquire exists, a frisk must be based upon a reasonable suspicion that the officers are in physical danger and that defendant poses a threat to their safety *(People v Benjamin,* 51 NY2d 267, 270; see *Terry v Ohio,* 392 US 1; *People v Chestnut,* 51 NY2d 14, 21; *People v De Bour,* 40 NY2d 210, *supra).* As the Court of Appeals emphasized in *People v Benjamin (supra,* p 270), "a police officer is [not] prevented from observing circumstances at the scene and, if necessary, taking due precaution for his

own safety". While each case should be analyzed in light of its facts *(People v Chestnut, supra)*, such reasonable suspicion has been found to have been justified, for example, by potentially dangerous movements by a person approached by an officer who has been informed of "men with guns" *(People v Benjamin,* 51 NY2d 267, *supra)*; by suspicious movements of one reasonably believed to have just committed a crime while armed *(People v Chestnut,* 51 NY2d 14, *supra)*; by the knowledge that a person has just purchased a gun holster, combined with his refusal to respond to the officer's inquiry and withdraw his hand from his pocket *(People v Samuels,* 50 NY2d 1035) ; by the officer's observation of a person meeting the description of one said to be carrying a weapon, combined with the educated observation that the person is carrying a weapon *(People v Stewart,* 41 NY2d 65, *supra)*; and by the observation of a bulge in a person's clothing which has the configuration of a gun *(People v Prochilo,* 41 NY2d 759). The officer's concern must be based on clear and articulable facts; "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *(Terry v Ohio, supra,* p 27.)

In the case at bar, the record establishes that: Officer Clouden was informed by someone known only to him as "John" that defendant was wanted for questioning by homicide; defendant willingly identified himself and acknowledged that he had heard that the police were looking for him; defendant agreed to go to police headquarters for further questioning; defendant "[r]esponded very good" and was "[c]ooperative"; while leaving the mall, Deputy Battaglia patted down the front of defendant's jacket and discovered the revolver which defendant sought to suppress; Deputy Battaglia testified that he conducted the pat-down because of his knowledge that defendant was wanted for questioning regarding a homicide and due to a fear that defendant might be armed.

On the particular facts of this case the police officers had at most a common-law right to inquire and observe *(People*

*v Benjamin*, 51 NY2d 267, *supra*). Deputy Battaglia could not reasonably suspect that he was in danger of violence and that defendant posed a threat to his safety or the safety of others around him (see, e.g., *Pennsylvania v Mimms*, 434 US 106, 111-112; *Terry v Ohio*, 392 US 1, 27, *supra; People v Prochilo*, 41 NY2d 759, *supra*). Defendant's conduct, appearance and demeanor was neither suspicious nor furtive and bespoke no harm to either police officer. No telltale bulge was observed in his waistband (see *People v De Bour*, 40 NY2d 210, 222, *supra*) and the officers had no reason to believe that defendant was armed. There was no indication that a crime was afoot. Any knowledge Battaglia possessed about defendant was based solely upon the content of the conversation between Officer Clouden and defendant. Neither officer had independent information about the defendant or knew whether homicide wished to question him as a witness or as a suspect. There was nothing to indicate that defendant was involved in any criminal activity. Nor was the situation confronting the police fraught with tension or hostility and, indeed, defendant was described as co-operative. Main Place Mall was not characterized as a high crime area. There was no pressing urgency to act in order to defuse a volatile situation or to prevent escape (see *People v De Bour, supra*, p 226).

Thus, there was an insufficient basis for the pat-down of defendant, and the revolver should have been suppressed. There is an oft-repeated and legitimate concern for the safety of police officers in their dealings with those suspected of criminal activity (see, e.g., *Terry v Ohio*, 392 US 1, *supra*), and an officer is not required to "await the glint of steel" before he is entitled to a protective search (see *People v Benjamin*, 51 NY2d 267, 271, *supra*). Nonetheless, a police officer must have constitutionally adequate reasonable grounds before placing his hand on the person of a citizen *(Sibron v New York*, 392 US 40, 64; *People v Stewart*, 41 NY2d 65, 66, *supra*). The intrusion here, albeit minimal, was based at most upon unverified information that defendant was sought for questioning by homicide and that he would be transported to police headquarters in a police vehicle. The information possessed by the police officers, either standing alone or considered in conjunction

with their observations at the scene, did not rise to the level of reasonable suspicion warranting a self-protective frisk which produced the revolver. Since the intrusion was without legal support the arrest of defendant which followed was illegal.

The second stage of the analysis of this issue must focus, then, on defendant's claim that his oral and written statements to police should have been suppressed as the fruits of the illegal arrest. A confession which follows an illegal arrest will be admissible against a defendant only if shown to be an act of free will sufficient to purge the primary taint of the unlawful invasion *(Brown v Illinois,* 422 US 590; *Wong Sun v United States,* 371 US 471). This issue must be determined on the facts of each case *(Brown v Illinois, supra,* p 603). In focusing on the causal connection between the illegality and the confession, consideration should be given to the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct *(Dunaway v New York,* 442 US 200, 217-218; *Brown v Illinois, supra,* pp 603-604). Statements that are obtained by exploitation of illegal police conduct must be suppressed *(People v Misuis,* 47 NY2d 979, 981; *People v Boodle,* 47 NY2d 398, 404-405, cert den 444 US 969; see *Dunaway v New York, supra,* p 217; *Brown v Illinois, supra,* p 600).

In the case at bar, the record clearly establishes an unattenuated causal relationship between the seizure of the revolver and defendant's statements and a direct exploitation of the fruits of the Fourth Amendment violation. Once defendant was taken to police headquarters, the questioning focused on the weapon and the manner in which defendant obtained it. Moreover, defendant's first incriminatory statement followed a detective's statement that a test firing of the gun would establish it as the murder weapon and defendant's admission occurred less than 90 minutes after his first encounter with the police in the mall.

We have examined other issues raised by the defendant and find them to be without merit. Accordingly, the judgment of conviction should be reversed, the suppression motions granted and a new trial granted.

SIMONS, J. P., HANCOCK, JR., DOERR and DENMAN, JJ., concur.

Judgment unanimously reversed, on the law and facts, motion to suppress granted, and a new trial granted.