# (April 17, 1984)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSE VINCENTE, Respondent. — Order, Supreme Court, New York County (Felice Shea, J.), entered March 22, 1982 granting defendant's motion to suppress physical evidence consisting of a handgun and 23 glassine envelopes of cocaine, and statements made by the defendant, affirmed. ¶ The order of suppression should be affirmed for the reasons stated by the suppression Justice. ¶ As the partial dissent observes, the issue is largely one of credibility. We should not interfere with a determination on a motion to suppress by substituting our judgment as to the credibility of a witness for that of the suppression Justice. ¶ The only witness was one of the four police officers who apprehended and seized the defendant. The suppression Justice stated: "I found Police Officer Bernagozzi gave some credible testimony, however, I found his testimony in several important respects to be of dubious value, evasive and tailored to meet constitutional objections." ¶ Respecting the location of the garbage can, the court noted that the officer testified that the radio run described the garbage can as " 'by a liquor store' instead of the more probable near or in front of a liquor store." The court concluded that the officer used the word "by" in an effort "to explain the defendant's presence 50 feet west of the liquor store." ¶ The court further noted that the officer "noticed no garbage can on 123rd Street other than the one near defendant". The court observed that such testimony "does not have the ring of truth and seems to be designed to bolster the identification of the defendant as the suspect described in the radio run." The court doubted that there was only one garbage can in the street in the area. ¶ The court further noted that there was no description of the appearance of the three or four other people in the area in front of the liquor store. The court stated: "Defendant did no act that would cause suspicion and the police asked no questions. Wholly on the basis of the radio run and what was observed, Police Officer Conway, a uniformed police officer who arrived right behind Officer Bernagozzi in a second radio motor patrol car, frisked defendant and retrieved a gun from defendant's waistband." A search of the garbage can revealed nothing. Thus, the sole predicate for the police action was the anonymous radio run stating "in substance", as the suppression Justice found, "that a male Hispanic wearing a black hat, tan jacket and brown pants was selling drugs in front of or near a liquor store, and further that a gun and drugs were in a garbage can." This obviously imposed a duty on the police to respond and to investigate. However, unlike *People v McLaurin* (56 AD2d 80, 84, revd on dissenting opn 43 NY2d 902), the description did not indicate that the person involved was dressed in an unusual manner. Moreover, in *McLaurin* the individual was the only person on the street in the early hours of the morning. In our case it is conceded that several persons were at the location, and that there was no description of their clothing. The immediate frisk of the defendant has as its principal purpose discovery of evidence of a crime, not to allow the officers to pursue their investigation without fear of violence. In *McLaurin* there was only one officer, whereas here there were three or four. Here, the suspect did not completely fit the description. McLaurin walked with a limp, as the radio run reported. Here, as the suppression Justice observed, the description which matched the defendant ("male, Hispanic, tan jacket") is "almost non-specific on a street in Spanish-Harlem." ¶ In *People v Sustr* (73 AD2d 582), the defendant perfectly matched the description given by the informant, "a light-haired white man [in] a silver jacket" standing on a specific street corner amid a group of other people. The danger that this defendant might use a gun ultimately found on his person was not manifest, since the

report described the gun as being in a nearby garbage can, and defendant made no move which would indicate any danger. As stated here by the suppression Justice: "Under the circumstances herein, there was no appropriate indication for the pat down of the defendant by Police Officer Conway. There was no inquiry by any of the four officers present prior to the frisk. There was no furtive or suspicious activity on the part of the defendant, no factor rapidly developing or observed at the scene which might have elevated the suspicion of the police to a reasonable belief that they were in danger. Cf., People v. Benjamin, 51 New York Second, [267]." Concur — Sandler, Silverman and Fein, JJ.

Murphy, P. J., and Kassal, J., concur in part and dissent in part in a memorandum by Kassal, J., as follows: I am in agreement that the statement made by defendant at the precinct, following his arrest, that he bought the gun from a junkie a few days before his arrest, was properly suppressed. The record does not establish beyond a reasonable doubt that the statement was voluntarily made after an intelligent and knowing waiver of defendant's right to remain silent and his right to counsel. While the police officer testified that it was made after *Miranda* warnings had been issued, the record supports the finding by the suppression court that the officer's testimony regarding the statement lacked credibility, particularly in view of the concession by the prosecutrix that, prior to trial, the officer had admitted to her that the statement, as to the gun, was made before defendant had been read his rights from the printed form. The Trial Justice, having observed the demeanor of the witness, was best able to pass on credibility and, in light of the recollection by the Assistant District Attorney, the determination to suppress the statement was properly made. However, I disagree with the majority in affirming suppression of the gun and the 23 envelopes of cocaine found on defendant's person and, accordingly, I would modify the order to that extent and remand the matter for further proceedings. ¶ On August 29, 1981, at about 1:25 A.M., Officer Bernagozzi and three other officers responded to a radio run of a male Hispanic, wearing a black hat, tan jacket and brown pants, selling narcotics "by" a liquor store at 123rd Street and Lexington Avenue. The radio transmission reported that the suspect was "armed with a gun" and that the narcotics were located "in the garbage can." The four officers, including Bernagozzi, responded and found defendant on 123rd Street, 50 feet west of Lexington Avenue, two or three feet from a garbage can. He was wearing a "very dark brown hat," a tan jacket and rust-colored pants. The officer, the only witness to appear at the suppression hearing, testified that he observed no one else near the garbage can and the closest persons were about 50 feet away, in front of a liquor store at the corner of 123rd Street and Lexington Avenue. Bernagozzi described the area as "one of the worst streets in the whole precinct," a known drug location, characterized by narcotic sales and the site of a number of shootings. ¶ Observing no one else in the immediate vicinity of the garbage can, Officer Conway patted defendant down, discovering a .32 caliber revolver in his waistband, while Officer Klein searched the garbage can but discovered no contraband. Bernagozzi placed defendant under arrest and, after giving him *Miranda* warnings from memory, took him to the station house, where he read the printed *Miranda* rights from an old arrest form. A search of the defendant at the precinct revealed a blue change purse containing 23 glassine envelopes of cocaine. ¶ On the adjourned date of the suppression hearing, before a decision was rendered, the People sought to reopen to adduce proof that none of the other persons in front of the liquor store matched the description in the radio run. The request was denied on the basis that there had been a full and fair opportunity to be heard at the hearing five days earlier "and I have prepared my decision and findings, that I should not consider any additional

testimony at this time." Thereupon, the motion to suppress was granted, the court concluding that the officer's testimony, while at times credible, was in significant respects "of dubious value, evasive and tailored to meet constitutional objections." It was found that the testimony that the radio run had reported that the suspect was "by a liquor store" was no more than an effort to explain defendant's presence 50 feet west of the store and, on this basis, it was determined that the radio run actually reported that the suspect was selling drugs "in front of or near a liquor store." The suppression court also found incredible the testimony that there was no other garbage can on 123rd Street other than the one near the defendant, concluding that this was "designed to bolster the identification of the defendant." Relying upon the absence of any testimony describing the persons in front of the liquor store and the fact that the clothing worn by defendant did not match, in every detail, that described in the radio run, it was found that there was an insufficient predicate to justify the stop and frisk. Accordingly, the court suppressed the gun and the drugs, citing the absence of any proof as to (1) suspicious or furtive activity by defendant or (2) any testimony that the officer reasonably believed himself to be in danger. The record does not disclose to what extent the court relied upon the erroneous finding that the radio run reported that the gun was in the garbage can. ¶ Under the circumstances, I find that the court erred in denying the People's motion to reopen in order to adduce proof that none of the persons in front of the liquor store matched the description in the radio run. The interests of justice required receipt of this relevant proof and the application should not have been denied on the ground that the suppression Justice had already prepared its decision and factual findings. ¶ In any event, I find the record sufficient to conclude that the officers acted with reasonable suspicion, relying upon the information furnished in the radio run, in making the frisk. They were apprised by that communication that the description of the suspect was a male Hispanic, "armed with a gun," wearing a black hat, tan jacket and brown pants, who was selling drugs "by a liquor store" and that the drugs were in a garbage can. Upon arrival on the scene, they did encounter defendant, two or three feet from the garbage can, closely matching the description which had been furnished to them. The fact that defendant wore a "very dark brown hat," rather than a black one, and rust-colored, rather than brown pants, is without dispositive effect, considering that the report had been made in the early morning hours, when it was dark. Under such circumstances, the slight difference in shades of color would not necessarily be noticeable and should not materially affect the propriety of the police action taken in reliance thereon. ¶ Contrary to the conclusion of the suppression court, I find no significance in the fact that the officer reported that the radio run described the person as selling narcotics "by" the liquor store rather than "in front of" or "near" the store. The court placed undue emphasis upon the officer's use of the word "by," disregarding the question posed to the officer which sought his testimony as to "the substance" of the radio transmission, not the specific language used. Moreover, the colloquial use of the word "by" carries with it the same connotation as the word "near". Also, considering that the officers were responding to a call of one selling narcotics which were "in the garbage can," when they observed the can some 50 feet from the store, it was more logical for them to conclude that the suspected seller would be closer in proximity to the can than to the liquor store. ¶ I find the police intrusion in this case fully justified under the circumstances. The fact that the officers were responding to a report involving narcotic sales by a man armed with a gun warranted the limited intrusion by the frisk or pat down here (see *People v McLaurin,* 43 NY2d 902, revg 56 AD2d 80, 84, on dissenting opn of Nunez, J.; *People v Sustr,* 73 AD2d 582). The minor discrepancy in the appearance of the defendant in

relation to the information imparted to the officers is not dispositive. Instructive is *People v Fernandez* (58 NY2d 791, 793), where the Court of Appeals found: "The police action was not rendered illegal because there was an inconsistency as to some elements of the description (defendant's height and hairstyle — he is only five feet, six inches tall and had wavy hair combed straight back — and as to the particulars of the shirt defendant was wearing) or because there was a failure of proof as to correlation of another element (light blue pants). [The radio run there advised of a 5-foot 10-inch Hispanic with an afro hairstyle, wearing a white T-shirt and light blue pants.] The unusual identifying element carrying a white shirt in the hand, coupled with geographical proximity, provided ground for reasonable suspicion in the circumstances." ¶ Similarly, in this case, there were unusual identifying elements which created reasonable suspicion, authorizing the pat down or limited search. We have in the past observed that in evaluating the reasonableness of police confrontations, "we must take cognizance of the realities of urban life in relation to the dangers to which officers are exposed daily, which often require split-second decisions, with life or death consequences." (*People v Reyes,* 91 AD2d 935, 936.) Here, the officers were aware that the suspect was armed and was reported to be selling narcotics in a known high crime area. Under the circumstances, they were justified in proceeding with caution and in accordance with proper police procedure. To conclude otherwise would conflict with the court's observation in *People v Benjamin* (51 NY2d 267, 271) that "[i]t would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety." ¶ Upon this basis, I find that the officers acted with reasonable suspicion in frisking the defendant and, accordingly, the gun and the glassine envelopes containing cocaine subsequently discovered during the search at the station house should not have been suppressed. ¶ Accordingly, the order, Supreme Court, New York County (Felice Shea, J.), entered March 22, 1982, granting defendant's motion to suppress physical evidence and an inculpatory statement, should be modified, the motion to suppress the gun and the 23 glassine envelopes of cocaine denied and the case remanded to the Supreme Court for further proceedings and otherwise affirmed.