THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JEROME LARKINS, Appellant.

Fourth Department, April 4, 1986

APPEARANCES OF COUNSEL

*Paul Shanahan* for appellant.

*Howard R. Relin,* District Attorney *(Wendy Lehmann* of counsel), for respondent.

## OPINION OF THE COURT

DILLON, P. J.

The jury found defendant guilty of criminal possession of a controlled substance in the fifth degree. On appeal, he contends that cocaine and heroin seized in a search of his person should not have been received as evidence at his trial. We disagree, and hold that defendant's pretrial motion to suppress the narcotics was properly denied.

The evidence before the suppression court reveals that shortly after 1:00 A.M. on January 13, 1984, an identified citizen reported to Rochester Police Officer Tarnow that his car had just been struck by another vehicle which left the scene of the accident. The citizen provided a detailed description of the hit-and-run vehicle, including its year, model, color and license number. He also told Officer Tarnow that when he attempted to talk with the occupants, he heard someone in the vehicle mention that there was a gun in the car; that shots had been fired and that he had fired his own weapon as the vehicle departed. The officer relayed the relevant information over the police radio, including a report of "possible weapons in the vehicle" and that shots had been fired.

Shortly thereafter, a vehicle precisely matching the description was located in the vicinity by other police officers. Defendant, one of three occupants of the vehicle, was a rear seat passenger. Officer Adams, who testified that he had heard Officer Tarnow's radio message stating "in sum and substance that a shot had been fired and someone had a gun", approached with his gun drawn and ordered defendant to step out of the vehicle. Adams frisked defendant, felt a "distinctive lump" in the area of defendant's left forearm and removed a leather "ammunition pouch" which he recognized "as one commonly carried by sportsmen to carry .22 caliber ammunition". Suspecting that "it contained weapons or ammunition", the officer opened the pouch and found a tightly bound bundle of 25 glassine envelopes containing substances which he believed were narcotics. Defendant was then placed under arrest and a further search of his person revealed an additional 18 glassine envelopes and a separate plastic bag, all containing

similar substances. On analysis, the seized substances were found to be cocaine and heroin.

The Federal and State Constitutions protect every individual from unreasonable searches and seizures (US Const 4th Amend; NY Const, art I, § 12). In determining the reasonableness of police conduct, the total circumstances must be considered *(People v David L.,* 81 AD2d 893, 895-896 [Hopkins and Weinstein, JJ., dissenting], *revd on dissenting mem* 56 NY2d 698, *cert denied* 459 US 866). Here, given the citizen's detailed description of the hit-and-run vehicle, the police had probable cause to stop and/or detain the vehicle matching that description *(see, People v Davidson,* 110 AD2d 776). Having effected a lawful detention for the traffic infraction *(see,* Vehicle and Traffic Law § 600), the police were entitled to order the defendant and his companions out of the car *(see, Pennsylvania v Mimms,* 434 US 106; *People v David L., supra).* Armed with reliable information that one of the occupants might possess a weapon and that shots had been fired, Officer Adams was justified in approaching the vehicle with gun drawn *(see People v Rosario,* 94 AD2d 329; *People v Livigni,* 88 AD2d 386, *affd* 58 NY2d 894). On the same basis, the frisk of defendant by Officer Adams was justified as self-protective *(see, People v McLaurin,* 56 AD2d 80, 84 [Nunez, J., dissenting], *revd on dissenting opn* 43 NY2d 902). It was premised upon a reasonable fear that defendant may have been armed *(see, People v Roth,* 66 NY2d 688; *People v Davis,* 64 NY2d 1143; *cf. Sibron v New York,* 392 US 40) and was, in our view, appropriate in order "to ensure that the result of [any] inquiry would not be a hail of bullets" *(People v Sterling,* 63 AD2d 210, 215; *see also, People v Chestnut,* 51 NY2d 14, *cert denied* 449 US 1018 [1980]). It has been thoughtfully said that a police officer need not "await the glint of steel before he can act to preserve his safety" *(People v Benjamin,* 51 NY2d 267, 271).

Surely Adams' rationally based fear was not alleviated by the discovery of an ammunition pouch on defendant's person *(cf. People v Roth, supra).* It was not unreasonable for the police officer to have believed that the pouch was being used for its intended purpose, i.e., to carry ammunition, and that a gun about which he had information would not be far removed. In the circumstances of this encounter, the presence of the ammunition pouch on defendant's person provided an additional predicate for a further search, not only for ammunition but for a gun as well *(see, People v Eckson,* 58 AD2d 608, 609). Indeed, Officer Adams testified as to his concern

that the pouch itself could have contained a small .22 caliber handgun. On cross-examination, Adams agreed with defense counsel's estimate that the pouch was "approximately * * * three by three or three by four" inches in size. That the pouch was of sufficient capacity to hold such a weapon is not now seriously disputed, even by the dissenter. We conclude that Officer Adams had a reasonable basis for opening the ammunition pouch and, upon doing so and discovering the narcotics, he had probable cause to arrest the defendant, as he did, and to complete the search of defendant's person.

In sum, the police conduct we see here was reasonable at every stage of the encounter and there was no violation of defendant's Federal or State constitutional rights.

The dissent requires comment. Neither *People v Russ* (61 NY2d 693) nor *People v Hauser* (80 AD2d 460) provides support for the dissenter's conclusion that the information possessed by the police officers "did not rise to the level of reasonable suspicion warranting a self-protective frisk" of the defendant. Both cases presented factual circumstances significantly different from those we see here.

In *Russ,* the information that defendant had been seen passing a handgun to another occupant of the car came from an anonymous source. There was no report of shots having been fired and at the time of the police encounter with the defendant, in broad daylight, defendant was the only occupant of the car *(People v Russ,* 91 AD2d 593, 597 [Milonas, J., dissenting]). The frisk of defendant was found to be unjustified because there was no reasonable basis to suspect that the defendant was armed or dangerous. Indeed, the only relevant information the police had immediately preceding the frisk was that defendant no longer had the weapon in her possession.

*Hauser (supra)* is equally inapposite. There, prior to the frisk which occurred in a lighted shopping mall, the police had no information that defendant had been involved in any criminal activity or that he might have possessed a weapon. The police encounter did not, as here, involve a nighttime confrontation with an occupant of an automobile and was not, as here, fraught with tension and potential hostility.

The dissenter expresses the view that Officer Adams' opinion that the ammunition pouch could have contained a .22 caliber handgun "is, as a matter of law, incredible and specifically tailored to meet constitutional objections". While we do

not question the power of one sitting in appellate review to make such a finding in the first instance *(see, People v Berrios,* 28 NY2d 361, 369), it is a power sparingly to be exercised. This is so for the obvious reason that the appellate court is without opportunity to employ the criteria ordinarily used in assessing credibility *(see, e.g., People v Prochilo,* 41 NY2d 759). Indeed, in *People v Vincente* (100 AD2d 789, *affd* 63 NY2d 745), which is cited by the dissenter as support for the view expressed, the suppression court had a full opportunity to assess credibility and found a police officer's testimony "in several important respects to be of dubious value, evasive and tailored to meet constitutional objections". In affirming that finding, the Appellate Division properly noted: "We should not interfere with a determination on a motion to suppress by substituting our judgment as to the credibility of a witness for that of the suppression Justice" *(People v Vincente,* 100 AD2d 789, *supra).* There is no reason here to depart from that well-established approach to appellate review. The record contains no adequate basis to support a finding that the police officer's testimony was incredible, tailored or false, and the suppression Justice, after hearing and observing the witness, made findings which fully credited his testimony.

We have reviewed the other issue raised by defendant and find it to be without merit. Accordingly, the judgment should be affirmed.

GREEN, J. (dissenting). I must dissent. The record does not establish that the police had a right to frisk the defendant for the limited purpose of discovering a weapon or, assuming that the frisk was justified, that the police had the right to seize the contents of the small leather pouch found on defendant's person. I acknowledge that the officers had the right to stop the car in which defendant was riding as a passenger and to order the defendant and his two companions out of the car for inquiry *(Pennsylvania v Mimms,* 434 US 106; *People v Russ,* 61 NY2d 693, 695; *People v Landy,* 59 NY2d 369, 376). This is so because the car fit the detailed description of a car involved in a hit-and-run accident occurring shortly before the stop and in the vicinity of the accident. The stop of the car, however, did not justify the frisk of the defendant absent a reasonable basis for the officer to suspect that defendant was armed and dangerous *(Sibron v New York,* 392 US 40, 64; *People v Carney,* 58 NY2d 51; *People v Stewart,* 41 NY2d 65, 69). There is here no reasonable basis for such suspicion.

The People rely on the unverified information from the

victim of the hit-and-run accident that when the victim attempted to converse with the occupants in defendant's car the victim heard mention of a gun and stated that shots were fired. Upon further questioning by the hearing court, however, the officer testified that he learned it was the victim, not defendant or one of his companions, who fired the shots. The officer conceded that neither defendant nor his companions were uncooperative, suspicious or made any furtive movements (cf. People v King, 65 NY2d 702). No weapon was found within the car or on any of the occupants of the vehicle. Moreover, defendant, a passenger in the back seat, was not responsible for the hit-and-run accident. Hence, the information possessed by the police officers, either standing alone or considered in conjunction with their observations at the scene, did not rise to the level of reasonable suspicion warranting a self-protective frisk which produced the controlled substances upon which defendant's conviction was based (People v Russ, supra; People v Hauser, 80 AD2d 460, 464-465).

The fact that in Russ (supra) the information concerning a gun was supplied by an anonymous radio tip and defendant's actions there were not concealed by darkness, or the fact that in Hauser (supra) there was no indication that defendant was possibly involved in criminal activity, does not render these decisions inapplicable here. The importance of Russ and Hauser is not the identity of the informant, or whether the crime occurred during the day or night, but rather whether the information possessed by the officer constitutes reasonable suspicion to believe defendant possesses a weapon. There was no basis for such suspicion here because the accident victim-informant did not see defendant or his companions with a gun and the only shots fired were by the victim. Indeed, Russ is a much stronger case for finding reasonable suspicion that defendant possessed a gun because there, defendant was seen actually possessing a handgun and passing it to another occupant of the car. Nevertheless, the court granted defendant's motion to suppress a pistol seized from her following a frisk because there was "no basis for inferring that she had another [gun] or that it had been returned to her" (People v Russ, 61 NY2d 693, 695, supra).

Even assuming the frisk was justified, however, there was no reasonable basis for the officer to open the leather pouch found on defendant's person during the frisk. The pouch was described by the officer as approximately 3 by 3 inches in size, containing a "tightly bound" bundle, tied with rubberbands

making a "distinctive lump" which, in the officer's opinion, could have contained a .22 caliber handgun. In my view, the officer's opinion is, as a matter of law, incredible and specifically tailored to meet constitutional objections *(see, People v Berrios,* 28 NY2d 361, 369; *People v Guzman,* 116 AD2d 528, 531; *People v Quinones,* 61 AD2d 765, 766; *cf. People v Vincente,* 100 AD2d 789, *affd* 63 NY2d 745). The officer did not claim that he believed the pouch contained a weapon other than a gun, nor could he have based on the information received because the victim mentioned the possibility that only a gun was involved. Of course, a police officer need not "await the glint of steel before he can act to preserve his safety" *(People v Benjamin,* 51 NY2d 267, 271) but, here, there was no reasonable basis for the officer to suspect that there was anything "steel" in the small, opaque, leather pouch. Hence, my review of the record leads to the conclusion that not only does the evidence fail to show any antecedent conduct evincing criminality on the part of the defendant, but it also lacks proof of a describable object from which the officer could conclude that defendant had a gun *(see, People v Roth,* 66 NY2d 688, 690; *People v Wiley,* 110 AD2d 590, 591; *People v Williams,* 79 AD2d 147, 150; *cf. Sibron v New York,* 392 US 40, 65, *supra).*

Accordingly, the judgment should be reversed, on the law and facts, defendant's motion to suppress should be granted, and a new trial granted.

CALLAHAN, DOERR and PINE, JJ., concur with DILLON, P. J.; GREEN, J., dissents and votes to reverse the judgment, on the law and facts, grant defendant's motion to suppress and grant a new trial.

Judgment affirmed.