■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE MALDONADO, Appellant.—Judgment of the Supreme Court, New York County (Brenda Soloff, J., at suppression hearing; Shirley R. Levittan, J., at plea and sentence), rendered on June 17, 1983, which convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentenced him to a term of five years' probation, is reversed, on the law and the facts, the conviction vacated, the motion to suppress granted and the indictment is dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as, in the interest of justice, is required.

At approximately 11:30 P.M. on the night of August 28, 1982, Police Officers John Feeney and Richard Keeney responded to an anonymous report that a black-haired, male Hispanic of about 50 to 55 years of age wearing a tan jacket was carrying a gun in a social club on Broome Street in Manhattan. They proceeded to the location in question where

some 30 patrons were gathered. The club was dimly lit, and the windows were covered with an opaque material. Officer Keeney entered first and went toward the bar in the rear of the premises, while Officer Feeney remained about five feet from the door. According to Officer Feeney, he noticed almost immediately that defendant was moving sideways in the direction of the door. Officer Feeney testified that he believed that defendant, a 31-year-old male Hispanic clad in a camel-colored jacket, fit the radio description. After briefly observing defendant, the officer stepped in front of defendant with his arms extended at chest level and directed him to stop. Officer Feeney stated that defendant continued walking, thereupon colliding with the officer. At this point, Officer Feeney felt a hard object in the left breast pocket of defendant's jacket. Officer Feeney inquired if defendant had a gun, and, receiving no reply, he conducted a frisk of defendant's outer clothing and removed a loaded, fully operable, semiautomatic .25 caliber pistol from defendant's left breast pocket.

In the meantime, Officer Keeney spotted a male Hispanic, approximately 55 years of age and wearing a beige sweater, who was standing by the bar. Officer Keeney watched as the man pulled on his sweater as if to conceal something. As the officer approached the man, he saw the latter attempting to hide a steak knife, which the officer confiscated. Officer Keeney also asserted that he had not noticed defendant make any overt motions or advance towards the entrance of the club; he also acknowledged that defendant did not appear to be 50 to 55 years old. Police Officer Gary Jones, who arrived at the club with his partner shortly after Officers Feeney and Keeney, claimed that he observed Officer Feeney stop defendant with his outstretched arms. Although Officer Jones did not see defendant walk into Officer Feeney, he did hear Officer Feeney ask defendant where he was going and then watched the other officer pat down defendant's outer garments. Officer Jones also observed Officer Feeney reach inside defendant's jacket and remove a gun.

The hearing court denied defendant's motion to suppress despite finding certain portions of Officer Feeney's testimony to be "unworthy of belief". In the view of the court, Officer Feeney acted reasonably in frisking defendant based upon the officer's knowledge that the social club was a high crime area and had been the scene of previous incidents, defendant's general similarity to the description contained in the radio report other than in the matter of age and his furtive movements toward the door, as well as the fact that the radio run

concerned a gun. However, the court did not credit Officer Feeney's statement regarding the manner in which he came to feel a hard object in defendant's jacket nor the officer's contention that he thought that the radio run broadcast the suspect's age as being between 40 and 45 years old.

The only issue raised on appeal is whether there were adequate grounds for the stop and frisk which occurred herein. In that connection, the police, relying upon an unverified tip of a "man with a gun", entered a social club known for prior criminal activity. Within seconds of their arrival, Officer Feeney had conducted a patdown of defendant, whose behavior was innocuous and unsuspicious, merely because he was a male Hispanic wearing a camel-colored jacket, certainly not an uncommon item of apparel, and notwithstanding the fact that he did not look to be anywhere near 50 to 55 years of age. While the radio transmission received by the officers may have provided a sufficient predicate upon which to make an initial noncustodial inquiry *(People v Landy,* 59 NY2d 369; *People v Harrison,* 57 NY2d 470; *People v Benjamin,* 51 NY2d 267; *People v De Bour,* 40 NY2d 210), there is no indication that the officers also possessed the requisite reasonable suspicion to conclude that defendant had committed or was about to commit a crime such as would support a frisk for weapons.

The hearing court discounted Officer Feeney's testimony that he encountered a hard object in defendant's breast pocket when the latter bumped into him. The court also declined to accept the officer's claim with respect to the age of the suspect given in the radio report. As for defendant's alleged furtive movements, observed only by Officer Feeney, they consist, at best, of no more than defendant's walking toward the door. Thus, all that is left is the presence of a Hispanic man clad in a camel-colored jacket in a social club wherein crime had previously taken place. Under these circumstances, the police were confronted only by facts subject to innocent interpretation. In *People v De Bour (supra,* p 216), the Court of Appeals declared that: "We have frequently rejected the notion that behavior which is susceptible of innocent as well as culpable interpretation, will constitute probable cause * * * It is equally true that innocuous behavior alone will not generate a founded or reasonable suspicion that crime is at hand." Absent other indications that an individual is armed and dangerous, a radio report of a "man with a gun" consisting of a vague general description and based upon an unverified tip is not sufficient to trigger a stop and frisk. *(People v Benjamin, supra; People v Stewart,* 41 NY2d 65.) Therefore, the informa-

tion that the individual in question was an Hispanic male wearing a beige jacket did not furnish the necessary specificity to justify the frisk where "the description did not indicate that the person involved was dressed in an unusual manner." *(People v Vincente,* 100 AD2d 789, *affd* 63 NY2d 745.) Not only was the description here sufficiently imprecise to be able to apply to any number of people *(see, People v La Pene,* 40 NY2d 210), and did, indeed, more readily fit the person from whom Officer Keeney retrieved a knife, but defendant did not even match the one characteristic which was at all out of the ordinary—the suspect's purported age. Consequently, the hearing court should have granted the motion to suppress. Concur—Carro, Milonas, Rosenberger and Ellerin, JJ.

Sandler, J. P., dissents in a memorandum as follows: I dissent and would affirm the denial of the motion to suppress, and the conviction thereafter resulting from defendant's entry of a guilty plea, for the reasons set forth in Justice Soloff's carefully considered, judicious and persuasively reasoned opinion.

Undeniably, particularly given the age discrepancy, the appearance of the defendant did not sufficiently match the description of a man with a gun to justify a detentive stop of the defendant without some additional facts or circumstances pointing to the defendant as the likely subject of the radio report. The critical question confronting the hearing Judge was whether the description sufficiently matched the defendant to justify the police action, when considered together with the evidence of his sidestepping movement to the exit door of a dimly lit social club well known to the police officers from prior radio runs, a movement described as "furtive" by the hearing Judge, who had the opportunity, which this appellate tribunal, of course, did not have, to observe demonstrated during the hearing.

The hearing court concluded that the totality of the facts gave rise to a reasonable suspicion justifying the police action that was taken. I see nothing in this record to justify disturbing this manifestly sensible determination of what is essentially a factual issue.

The hearing Judge's opinion set forth with scrupulous accuracy the relevant evidence presented, identified precisely that which she found credible in the testimony and that which she did not, and accurately described the applicable legal standards. The hearing court's ultimate conclusion was set forth lucidly and cogently in the following words: "Except for age, defendant fit the description given; he was Hispanic, had dark

hair, and wore a jacket the color of which, particularly given the lighting conditions, was in the beige to grey range. As for defendant's age, although he was 31, he did appear somewhat older, as testified to by P.O. Keeney as well as by P.O. Feeney, and as verified by the court's own observation. P.O. Feeney's suspicions were further and reasonably aroused by defendant's attempt to reach the exit of the club in a furtive manner by sidestepping toward the officer's rear. This reaction to a uniformed officer, under the circumstances which included the expectation of finding a man with a gun, was sufficient to provide P.O. Feeney with justification to stop defendant to make further inquiry, while taking due precaution for his own safety and that of the Saturday-night patrons of the social club. (See *People v. Benjamin,* 51 NY2d 267 [1980]). The exterior pat-down effected by P.O. Feeney was a limited search, appropriate to the circumstances. The seizure of the gun occurred only after the officer felt a hard object through defendant's garment."

From the standpoint of the hearing court, the issue presented was a close one, a fact implicit in the conspicuous care with which the evidence was described and evaluated. The hearing court decided that the defendant, whose appearance was close enough to the radio description to make him a possible suspect, given the common imprecision of such descriptions, sufficiently identified himself as the subject of the radio communication by the nature of his response to the police presence—his apparent, indeed quite obvious, effort to leave the social club without the police officers observing that he was doing so. I see no basis for the conclusion implicit in this court's memorandum that the determination of the hearing court was contrary to the weight of evidence or erroneous as a matter of law.

Accordingly, the judgment of the Supreme Court, New York County (Brenda Soloff, J., at suppression hearing; Shirley R. Levittan, J., at plea and sentence), rendered June 17, 1983, which convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentenced him to a term of five years' probation, should be affirmed.