# The People of the State of New York, Respondent, v Floyd Brooks, Appellant.

Second Department, August 30, 1982

**APPEARANCES OF COUNSEL**

*Bruce H. Belsky* (*Renee G. Mayer* of counsel), for appellant.

*Denis Dillon, District Attorney* (*Anthony J. Girese* and *Lawrence J. Schwarz* of counsel), for respondent.

BOYERS, J.

We are asked on this appeal to consider, *inter alia,* (1) whether the statements made by the defendant to the police upon being stopped after the commission of the crime herein involved and later at the police station after his arrest should have been suppressed by the trial court either because the initial stop of the automobile driven by defendant was illegal or because the police officer who stopped the vehicle ordered the defendant out of the car at gunpoint, and (2) whether the denial by the trial court of defense counsel's application for an adjournment for the purpose of obtaining a portion of the transcript of defendant's first aborted trial, allegedly needed to aid him in impeaching a prosecution witness during cross-examination, prejudiced the defendant and rendered his trial unfair. It is our opinion that the suppression motion was properly denied and that the trial court's failure to grant defense counsel's application for an adjournment did not in any way affect the jury's verdict.

On Saturday, February 24, 1979, at approximately 3:00 A.M., James Warner, the custodian of Schreiber High School in Port Washington, New York, observed that there had been an intrusion into the school. He contacted the police and Officers Bucking and Soper responded in separate squad cars. Bucking arrived first. Together with Mr. Warner, Bucking entered the school, surprising the intruders who thereupon fled from the building. It was raining heavily.

As Officer Bucking pursued the intruders, he observed that they were three black males. One ran off in one direction; the other two, one wearing a grey coat and the other a blue coat, ran in another direction with Bucking close behind, entered a wooded area and disappeared from the officer's sight. A few seconds later Bucking heard a car engine start. Knowing that Officer Soper was positioned on a nearby roadway, Bucking immediately communicated with Soper over his walkie-talkie informing him that he had heard a car start, in which direction the car was heading, and of the types of coats worn by the two black males.

About 30 seconds later, a 1976 Lincoln automobile driven by the defendant passed by Officer Soper who, in turn, put on his flashing lights and, after following the car for a very short distance, directed the defendant to stop. Soper observed some motion in the rear seat of the car and noted that the rear windows were fogged up. He exited his vehicle with his gun drawn and, pointing it at defendant, directed him to get out of his car. As defendant alighted, he stated to Soper, "Why are you stopping me? I'm just here with my girl." Soper then approached the car, saw two other male blacks and a black female inside and directed them to get out as well. One of the male blacks was wearing a blue coat and there was a grey coat on the back seat of the car. This was consistent with the coats described to him by Bucking. Soper then placed the three men under arrest. Defendant was advised of his *Miranda* rights during the journey to the station house. Upon reaching the police station, and after being further advised of his *Miranda* rights, defendant gave a detailed statement to the police, which though generally exculpatory, was in certain aspects supportive of the People's case at trial.

Testifying on his own behalf at the *Huntley* hearing, the defendant initially claimed not to have made any statements at all to the police, either at the scene or the station house. However, he later conceded that he did make a statement to Officer Soper as he exited his car but not exactly that which was claimed by Soper to have been made. Although defendant testified that Soper aimed his gun at his head when he ordered him from the vehicle, defendant did not assert that he felt compelled by this act to say anything at that time.

Defendant's application to suppress his statements as set forth in his pretrial omnibus motion was merely a boilerplate demand for suppression. No specific statement was referred to, no claim of specified involuntariness was asserted and no argument in support of suppression was made. Nevertheless, in their desire to insure that a complete record was made (see *People v Havelka,* 45 NY2d 636), the People consented to a *Huntley* hearing. Though at the conclusion of the hearing, defense counsel conceded that once Officer Soper saw the coats, one on one of the

suspects and the other on the seat of the car, he had probable cause to arrest the three men, he argued that Soper had no lawful reason to stop defendant's car. Defense counsel referred to Officer Soper's use of his gun, but his sole contention in this regard was that defendant's statement, made as he exited his vehicle, was not spontaneous because it was made at gunpoint. No other argument was presented as to this contention and it was not further developed.

The trial court denied defendant's motion to suppress, finding, *inter alia,* that the stop of the car driven by the defendant was based upon reasonable suspicion, that the statement made to Soper by defendant as he exited his car constituted a spontaneous utterance and that the police testimony was credible, while that given by defendant was not.

Upon appeal, defendant contends, *inter alia,* that (1) the police did not have sufficient cause to justify the stop of his automobile, (2) Soper's use of his gun was improper because he was not possessed of articulable facts from which it could be reasonably inferred that he was in fear of the use of deadly physical force, and (3) the use of the gun created a situation where he believed he had to verbally respond to the officer when stopped and, accordingly, his statement made at that time was not spontaneous.

It is well established in this State that a police officer may not stop an automobile unless he is possessed with at least reasonable suspicion to believe that criminal activity has taken place and that the driver of the car or its occupants were participants therein (*People v Sobotker,* 43 NY2d 559, 563). The term "reasonable suspicion" has been defined as denoting "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" (*People v Cantor,* 36 NY2d 106, 112-113). This belief, however, may not be a mere hunch; it must be based upon articulable facts which, when examined objectively, would lead others to the same conclusion (see *People v Sobotker, supra*). Utilizing this standard, we think that Officer Soper was justified in stopping defendant's automobile.

Soper was possessed of knowledge that three intruders had just been interrupted and caused to flee from the nearby high school. He had positioned himself on a back road leading away from the school. Two of the perpetrators were chased from the school by a fellow police officer to a point where, though he lost sight of them, he heard a car start. Thirty seconds thereafter, defendant's vehicle, driven by a black male, passed Officer Soper. The time was approximately 3:00 A.M., and it was raining heavily.

■ The time of day, the weather, the similarity of the race of the driver with that of the alleged perpetrators, the direction in which the car was being driven, the fact of Officer Bucking's continuing hot pursuit and the fact that defendant's vehicle emerged at the point where Officer Soper was strategically waiting only 30 seconds after Bucking informed Soper that he had heard a car start, taken together, lead only to the reasonable conclusion that the defendant was involved in the matter under investigation and that he was one of the men pursued from the high school by Officer Bucking. Officer Soper was certainly possessed of reasonable suspicion when he stopped defendant's car. Accordingly, such stop was lawful and proper (see *People v Finlayson,* 76 AD2d 670, 676-678, cert den 450 US 931).

Upon appeal, defendant, for the first time, argues that Officer Soper's use of his weapon to detain him was improper and requires that all statements flowing from such detention must be suppressed.

The proper basis for suppression in such an instance, which argument was neither made to the trial court nor set forth in appellant's brief, is that though a stop predicated upon reasonable suspicion may be just and proper, the use of excessive force may transform a simple momentary detention for the purpose of making inquiry, into an arrest on less than probable cause (see *People v Chestnut,* 51 NY2d 14, 19-21, cert den 449 US 1018; *People v Finlayson, supra,* at pp 678-679).

As Presiding Justice MOLLEN observed in *People v Finlayson* (*supra,* at p 678), "the Court of Appeals has recently rejected the notion that whenever an officer approaches a

citizen with weapon drawn he effects an arrest supportable only by probable cause. (*People v Chestnut,* 51 NY2d 14, 21 \* \* \*.)" Both this court in *People v Finlayson (supra)* and the Court of Appeals in *People v Chestnut (supra)* held that a police officer in the front line of crime has the right to draw his weapon in a situation where he legitimately believes that he might be in jeopardy, for his own protection, and that the officer's safety is of paramount concern. Thus, it was pointed out in both cases that the Constitution protects the citizenry only from unreasonable search and seizure and that the reasonableness of the force utilized in effecting a stop and detaining a citizen must be determined by the circumstances presented (*People v Livigni,* 88 AD2d 386).

In the case at bar, Officer Soper was alone, on a rainy back road at approximately 3:00 A.M., when he encountered at least two persons in an automobile with "steamed-up" rear windows, which persons were suspected of breaking into a nearby high school with intent to commit a larceny. The officer had no way of knowing whether they were armed or unarmed, and considering the totality of the circumstances, we cannot say that Officer Soper was unreasonable in his actions. Certainly, "[i]t would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety" (*People v Benjamin,* 51 NY2d 267, 271). The limited intrusion upon defendant in the instant case, undertaken not to discover evidence but to enable the officer to pursue his investigation without fear for his safety, was a reasonable response (see *People v Chestnut,* 51 NY2d 14, 23, *supra; People v Stroller,* 42 NY2d 1052, 1053).

Nor are we persuaded by defendant's argument that Officer Soper's drawing of his weapon somehow amounted to latent questioning which induced defendant to make the statement he did upon exiting his automobile. Though the Court of Appeals has recognized that a statement which is precipitated by subtle forms of interrogation is no more spontaneous than a statement which was obtained through blatantly coercive techniques, it stated that "[t]he test in such situations cannot be whether, through hindsight, the defendant professes to believe the police intended to pro-

voke an incriminating response. Were that so", the Court of Appeals went on to observe, "virtually any police remark, no matter how innocuous, would constitute an interrogation as long as it was followed by an inculpatory statement" (*People v Lynes,* 49 NY2d 286, 295).

In *Lynes* the court stated (p 295) that the test applicable in determining whether a remark made by an accused to the police was spontaneous is an objective examination of the facts presented to ascertain whether the statement in question was "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant".

When the facts of the instant case are viewed in the context of the *Lynes* rule, it is clear that defendant's statement upon being stopped cannot be considered to have been extracted from him by Soper's conduct. The genesis of the remark may be found instead in defendant's fear, his guilty conscience and a self-serving attempt at self-preservation. Were we to hold otherwise, the ordinary act of apprehension by the police would be transformed into latent questioning and any utterance made by an accused at such time would be suppressible regardless of how spontaneous and unprovoked it was (see *People v Lynes, supra,* at p 295).

As may be seen from the foregoing, suppression is not required either by reason of an alleged illegality of the stop of defendant's automobile or because the arresting officer had the good sense to place his drawn weapon between himself and the suspects he had apprehended.

■ At his trial, defendant moved for an adjournment for the purpose of obtaining the transcript of the testimony given by a People's witness at defendant's first trial (such trial having ended in a mistrial by reason of a deadlocked jury) to aid in cross-examination and, more specifically, to impeach the witness. Such motion was made when it appeared to defense counsel that this witness had in several ways changed his testimony since the first trial. Though the motion should have been granted, we are unconvinced that a new trial is required. Defense counsel represented defendant at his first trial. Though he told the

trial court that he desired the transcript because he did not have a photographic memory and could more effectively impeach the witness if he had the written words before him, a reading of the transcript of the trial now on review would indicate that defense counsel recalled each point on which this witness' testimony differed, that he challenged the witness in regard thereto at length, and that in each instance the witness conceded that his testimony had in fact changed. As may be seen then, this witness was caused by defense counsel to give testimony demonstrating the inconsistency of his testimony at the two trials. Therefore, clearly, defendant was not in any way prejudiced by the denial of the application for the adjournment and the failure of the trial court to grant the request did not in any way contribute to the jury's verdict of guilty (see *People v Crimmins,* 36 NY2d 230).

The other contentions raised by defendant on this appeal have been considered by us and found to be without merit.

MOLLEN, P. J., NIEHOFF and RUBIN, JJ., concur.

Judgment of the County Court, Nassau County, rendered May 19, 1980, affirmed.