■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD WILEY, Appellant.

On or about April 26, 1983, the defendant was charged, in a one-count indictment, with the crime of criminal possession of a weapon in the third degree. Subsequently, defendant moved to suppress both the subject weapon and the bullets seized with it. In response to this motion, a hearing was held. The People's entire case consisted of the testimony of New York City Police Officer Richard Biller (Biller).

Biller testified, in substance, as follows: On April 2, 1983, at approximately 5:00 A.M., in uniform, he and a partner were on radio motor patrol in a marked police car. While Biller was driving on East 167th Street, which is a "heavy drug location", he observed defendant, who was approximately 30 feet away, walking towards Hoe Avenue. Even though Biller only saw the right portion of defendant's body, there appeared to be a long rigid object in the defendant's right-hand jacket pocket, which object seemed to be longer than the length of defendant's hand, if the hand had been in that pocket. Thereupon, Biller made a U-turn and stopped the car by the curb next to the street where defendant was walking. Biller called to the defendant: "Hold it a minute", and the defendant walked over to the car. Since Biller was seated, the defendant crouched approximately 8 to 10 inches away and answered Biller's questions concerning where defendant was coming from and where he worked. Next, Biller inquired if the defendant had "any I.D.?" At that point, defendant

"pushed * * * the right hand portion, of the jacket away from his body * * * [and] the jacket did not crinkle or crumble, [since] it appeared to be rigid as he pushed it." In view of the fact that Biller now thought that defendant had a gun or weapon in the subject pocket, he told defendant "do me a favor, step back from the car?" Following this request, Biller "drew my service gun * * * kept it by my side and stepped out of the car", and instructed defendant "don't put your hands near your pockets, put [sic] your hands away from your body". Then Biller squeezed defendant's right pocket and felt a gun. While pointing his revolver at defendant, Biller ordered defendant to put his hands on the car, and extracted from the subject pocket a .22 caliber revolver contained in a white sock. Later, after handcuffing defendant, Biller found in defendant's pants' pocket five live rounds of ammunition that fit the weapon in issue.

The defendant did not testify or summon any other witnesses. Thereafter, Criminal Term denied the suppression motion. A short time after that, defendant entered his plea of guilty. We find that Criminal Term erred.

Our review of the record leads us to the conclusion that "[n]ot only does the evidence fail to show any antecedent conduct evincing criminality on the part of defendant * * * it lacks 'proof of a describable object' from which the officer could conclude that defendant had a gun." (People v Williams, 79 AD2d 147, 150.) To sustain this search, the officer must possess a "reasonable suspicion" of criminal activity. (Terry v Ohio, 392 US 1.) However, the officer's testimony indicates that the long object he observed in defendant's pocket could, he conceded, have been any one of a number of objects. There is no evidence of any furtive gesture, no visible outline of a gun, just simply the outline of a long, hard object. The evidence is insufficient to indicate any criminal activity was taking place, and clearly, the officer was unable to articulate such facts as would justify his suspicion. Therefore, we find that there was no reasonable suspicion to justify the seizure and frisk by this officer (People v Green, 54 AD2d 856).

We are compelled to note, in passing, the fact that it took the Legal Aid Society almost a year from the time we assigned them, in January 1984, to perfect this appeal. In view of the close legal question involved and the fact that the defendant was incarcerated, this is precisely the type of case that should have been given top priority. Our examination of the court file indicates to us that there was no impediment to speedy perfection, since the relevant minutes, consisting of less than 40 pages, were immediately available because daily copy had been ordered at the time of the suppression hearing (see, Criminal Term

clerk's docket minutes, Oct. 11, 1983). As a result of the delay, the defendant has served more than one half of the minimum portion of the sentence imposed before we had an opportunity to hear this appeal. Concur — Murphy, P. J., Ross, Lynch and Milonas, JJ.