■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL CRUTCHFIELD, Also Known as DERIK DICKSON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Starkey, J.), rendered November 3, 1982, convicting him of murder in the second degree (two counts), attempted murder in the second degree, manslaughter in the second degree (two counts), attempted robbery in the first degree (two counts), criminal possession of a weapon in the second degree (two counts), and assault in the second degree upon a jury verdict, and imposing sentence.

Judgment modified, as a matter of discretion in the interest of justice, by reversing the conviction for assault in the second degree and vacating the sentence imposed thereon. As so modified, judgment affirmed, and new trial ordered as to the seventh count of the indictment charging defendant with assault in the second degree.

It is reversible error to submit to the jury a theory of liability not contained in the indictment (*People v Duncan,* 46 NY2d 74, 79; *People v Kaminski,* 58 NY2d 886, 887). Although the Trial Judge read to the jury the count of the indictment charging defendant with assault in the second degree, pursuant to a felony assault theory (Penal Law § 120.05 [6]), he thereafter instructed the jury on the elements of assault in the third degree (Penal Law § 120.00 [1]). Since we cannot be confident that the jury found defendant guilty of the crime of which he was charged, the assault conviction is hereby reversed, as a matter of discretion in the interest of justice (*People v Melendez,* 96 AD2d 517).

Defendant raises several other issues on appeal; the following warrant a brief discussion.

We reject defendant's contention that the police lacked reasonable suspicion to stop the vehicle in which he was an occupant and lacked probable cause to arrest him. The arresting officer testified that at approximately 1:50 A.M., on April 23, 1981, he and his partner were parked at the corner of Mermaid Avenue and West 24th Street when he heard "banging noises". Shortly thereafter, he observed from a block away one tall and one short male running across Mermaid Avenue and south on 25th Street, towards Surf Avenue. Moments later, the officer drove the patrol car around the corner onto West 25th Street, towards Surf Avenue, and observed a tall man standing beside a parked Lincoln Continental automobile. The officer pulled alongside the Lincoln and saw a woman seated in the front passenger seat. After the tall man conversed with the woman, he walked into a building. There were no other people on that

block. The officer then backed the patrol car down the block returning to the corner of Mermaid Avenue and 25th Street where he was met by a group of people running out of a social club located on Mermaid Avenue, close to that corner. The people informed the officers that two men had shot three people in the club. While the officer was being informed of the shooting, the Lincoln pulled away from the curb and proceeded, in an erratic manner, south on 25th Street towards Surf Avenue. At this point, the officer possessed the reasonable suspicion required to stop the Lincoln and to order its occupants, defendant and a female driver, Janice Campbell, out of the vehicle for questioning (*see, People v Rosario,* 94 AD2d 329; *People v Crosby,* 91 AD2d 20, *lv denied* 59 NY2d 765; *People v Brooks,* 88 AD2d 451; *People v Finlayson,* 76 AD2d 670, *lv denied* 51 NY2d 1011, *cert denied* 450 US 931). The officer's drawing of his gun when he ordered defendant and his female companion out of the car did not transform the confrontation into an arrest, as this was a reasonable self-protective measure under the circumstances (*see, People v Chestnut,* 51 NY2d 14, 21, *cert denied* 449 US 1018; *People v Rosario, supra; People v Brooks, supra; People v Livigni,* 88 AD2d 386, *affd* 58 NY2d 894; *People v Finlayson, supra*). Upon observing two guns in plain view in front of the passenger seat of the car, the officer had probable cause to arrest defendant (*see, People v John BB.,* 56 NY2d 482, *cert denied* 459 US 1010; *People v Pacifico,* 95 AD2d 215; *People v Livigni, supra*).

Defendant next contends that the identification of him by an eyewitness, who had been injured in the shooting, should have been suppressed. Defendant had been wounded during the incident and was taken to a hospital by the police. The identification of defendant occurred when he was lying next to the eyewitness in a hospital emergency room. Said identification was admissible because it was spontaneous and resulted from an accidental, rather than a police-arranged, identification procedure (*People v Logan,* 25 NY2d 184, *cert denied* 396 US 1020; *People v Graham,* 67 AD2d 172, 176; *People v Gonzalez,* 61 AD2d 666, *affd* 46 NY2d 1011, *writ granted sub nom. Gonzalez v Hammock,* 477 F Supp 730, *revd* 639 F2d 844, *cert denied* 449 US 1088; *Lindsay v Henderson,* 499 F Supp 667, 670).

Defendant also argues that the circumstantial evidence adduced at trial was insufficient to convict him of acting in concert with his accomplice to commit an attempted robbery in the social club, an offense underlying the felony murder counts in the indictment. According to the prosecution witnesses, a tall man came into the social club, bought two cans of beer and then

went back outside. The man soon returned to the club with a shorter man, identified as the defendant. Defendant asked to exchange his beer for another. He then drew his gun and ordered the patrons of the social club not to move and to "hit the deck". Kenneth Bryson grabbed the defendant from behind. During the struggle for the weapon, bullets were fired, wounding patron Rosabell Miller and killing Mr. Bryson. After the first gunshots were fired, Jack Drayton, another patron, headed for the front door. The tall man, positioned by the door of the establishment, held his gun out and fired directly at Drayton. Drayton raised his right arm and avoided being hit. Drayton then fell to the floor, pretending to be hit, and heard more gunshots and screams. According to Drayton, the first bullet fired at him by the tall man went past him and hit Anthony Miller, a patron standing behind Drayton. However, Drayton testified that when he dropped to the floor, his view of the area behind him was blocked by the jukebox and that Mr. Miller did not fall to the floor until after a couple of more shots were fired. As defendant proceeded to exit the club, the tall male warned the crowd to stay down and not to follow or they would be shot. Mr. Miller died of a single gunshot wound in his abdomen. When the evidence is viewed in a light most favorable to the People (*see, People v Kennedy,* 47 NY2d 196, 203; *People v Benzinger,* 36 NY2d 29, 32), the behavior of defendant and his accomplice, combined with the testimony of Janice Campbell that defendant's accomplice had told her to leave the motor running in the Lincoln when they entered the social club prior to the shooting, was consistent with the prosecution's theory that the two gunmen attempted an armed holdup and excluded to a moral certainty every other reasonable hypothesis (*People v Kennedy, supra; People v Cleague,* 22 NY2d 363, 366; *People v Wachowicz,* 22 NY2d 369, 372). Having established the underlying felony of attempted robbery of the occupants of the social club and the deaths of Mr. Bryson and Mr. Miller during the course of said robbery, defendant's guilt of two counts of felony murder was also established beyond a reasonable doubt. The evidence was also sufficient to establish defendant's guilt beyond a reasonable doubt of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), which required a finding of intent to cause the death of Jack Drayton by means of a deadly weapon. Nor do we agree with the defendant's contention that the verdict acquitting defendant of the intentional murder of Mr. Miller, based upon a theory of transferred intent, and convicting him of attempted murder of Drayton was repugnant pursuant to the standard set forth in *People v Tucker* (55 NY2d 1, 6-7).

Although the prosecutor improperly referred to facts dehors the record when he told the jury, during his summation, that defendant had asked questions about the social club, directly suggesting that he was planning a robbery of the establishment (*see, People v Bonaparte,* 98 AD2d 778; *People v Rivers,* 96 AD2d 874; *People v Ochoa,* 86 AD2d 637; *People v McLeod,* 84 AD2d 794), the defendant did not preserve this error for appellate review as a matter of law by raising a timely objection at trial (*see,* CPL 470.05 [2]). We decline to reverse on this ground in the interest of justice. In any case, this error should be deemed harmless in view of the overwhelming circumstantial evidence establishing defendant's guilt of the attempted robbery charge (*see, People v Crimmins,* 36 NY2d 230).

We have reviewed defendant's other contentions and find them to be without merit. Titone, J. P., Bracken, Rubin and Lawrence, JJ., concur.