■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE ROBINSON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Leahy, J.), rendered June 8, 1978, convicting him of criminal possession of stolen property in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain physical evidence.

Ordered that the judgment is reversed, on the law and in the interest of justice, the aforementioned branch of the motion is granted, the indictment is dismissed and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

On the afternoon of January 5, 1978, Police Officer William O'Driscoll and his partner responded to a call of a burglary in progress. The complaining witness told O'Driscoll he had seen three youths passing television sets over the neighbors' backyard fences and saw two of them "take off". The officers received general descriptions of the burglars including their approximate age, that they were black, of medium build and of slightly different heights. The policemen immediately drove their patrol car in the direction in which the complainant said that the burglars had fled.

The officers saw the defendant and codefendant Gregory Washington standing on a corner two blocks from the burgled premises and approached them. In response to the officers' questions, the defendant said "what are you bothering me for? I didn't do anything". O'Driscoll noticed slight bulges in their coat pockets, but testified he knew the bulges did not resemble a gun. O'Driscoll and his partner nonetheless patted down the defendant and codefendant and recovered various items of jewelry from each of them. The officers thereafter brought the two youths to the complaining witness who positively identified them, whereupon they were formally arrested. The hearing court denied that branch of the defendant's omnibus motion which was to suppress the jewelry recovered.

The police had no justification for searching the defendant at the time they did. The information known to the officers at that time—a very general description that could have fit many people in the neighborhood and the presence of ambiguous bulges—fell far short of the probable cause required for a search or seizure (see, People v Battaglia, 56 NY2d 558; People v Carrasquillo, 54 NY2d 248, 254; People v White, 117 AD2d 127). While the information might have justified the limited intrusion of a stop to question the defendant (see, Terry v Ohio, 392 US 1; People v De Bour, 40 NY2d 210) the circumstances here did not justify a frisk. Such a frisk is permitted when the officer "reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed" (People v De Bour, supra, p 223; CPL 140.50 [3]). Here the officer conceded at the suppression hearing that he knew that he was not in danger. Since neither a search nor a frisk was justified, the items seized should have been suppressed.

Some of the prosecutor's remarks in summation would have been better left unsaid. In justifying the People's failure to retain for trial certain items of evidence seized from the defendant and his codefendant, the prosecutor asked the jurors to consider how they would feel if their homes had been burglarized. He also justified the failure to take fingerprints by asking what purpose it would serve "when we know who did it? We have no doubt as to what the witness or officer told us". Although this comment purported to answer questions raised by defense counsel, it improperly bolstered the credibility of the People's witnesses, and usurped the jury's function (see, Berger v United States, 295 US 78). Remarks such as these should be scrupulously avoided (see, People v Ashwal, 39 NY2d 105). Lazer, J. P., Mangano, Bracken and Kooper, JJ., concur.