■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILLIP HUGGINS, Appellant.—Judgment, Supreme Court, New York County (Juanita Bing Newton, J. at suppression

hearing; Thomas Galligan, J. at trial), rendered June 20, 1986, convicting defendant, upon a jury verdict, of two counts of robbery in the second degree and sentencing him to concurrent indeterminate terms of imprisonment of seven and one-half to fifteen years, unanimously affirmed.

After concluding that the Supreme Court erred in summarily denying defendant's motion for a *Mapp* hearing, the appeal from defendant's judgment of conviction was held in abeyance and the matter was remitted for the hearing. At the *Mapp* hearing which commenced on August 28, 1990, Sergeant Ruben Vazquez and his former partner Detective Ruben Santiago testified that at approximately 8:00 P.M. on December 16, 1985, they were in plainclothes, patrolling the East 80's of Manhattan in an unmarked car when they received a radio report of a woman screaming and a robbery with a gun at 77th Street and Cherokee Place. The report also indicated that the perpetrators were two black males, one short and one tall and that one man wore dark clothing while the other wore light clothing.

Upon arriving at 77th Street and Cherokee Place, a man approached the officers and told them that a robbery had occurred. He provided the same description of the perpetrators as reported on the radio. The officers also spoke to a doorman on the next street who stated that she saw two men matching the description running north. Although one officer testified that he did not speak to the complainant until after defendant was arrested, the other remembered speaking to her after responding to the scene. He stated that she told him the men who robbed her, whom she described in the same manner as the other witnesses, had put a scarf around her face and displayed a gun when they approached her in the walkway of her apartment building. She also pointed toward the F.D.R. Drive when asked in which direction the men had fled.

The officers then proceeded to drive uptown and, upon seeing two men who matched the descriptions provided on the opposite side of the F.D.R. Drive, exited at 92nd Street and pulled their car over to the shoulder of the road. The two men, defendant, who was 6 feet 2 inches tall and Gary Clark, who was 5 feet 6 inches, were the only people in the area and walked in a hurried manner while repeatedly looking around them. The officers watched the men cross the highway and stop by a bench. When it appeared that defendant and Clark were getting ready to leave, the officers radioed for backup assistance and began to approach the men.

Santiago was not sure but believed he drew his weapon

before approaching. While Vazquez did not take out his gun, he carried an eight inch black radio in his hand. When the officers walked toward them, defendant and Clark began to run in different directions. Vazquez gave chase and captured defendant after a police car cut off his path near First Avenue. A frisk of defendant revealed an imitation pistol in his pants' pocket. Santiago returned shortly with Clark who was placed in a separate police car from defendant. The complainant was then brought to the scene where she identified Clark. However, she was unable to identify defendant as her assailant. A scarf was later recovered from defendant at the precinct.

The Supreme Court concluded that the stop and frisk of defendant were reasonable and therefore denied defendant's motion to suppress. We agree.

In determining the legality of police conduct, the interference such conduct entails must be weighed against the "precipitating and attendant conditions known to the police as the encounter unfolds" *(People v Leung,* 68 NY2d 734, 736; *People v De Bour,* 40 NY2d 210; *and see, People v Stewart,* 41 NY2d 65). The officers' approach to defendant and Clark was reasonable. The two men, distinctive in appearance because of the disparity in height and contrast in color, were found in the area in which the witnesses had indicated the perpetrators had fled. In fact, they were the only people in the area. The officers watched as the men walked quickly, looked around them, crossed the highway and continued looking around as they paused by the bench.

Since the officers were informed that the perpetrators of the robbery were armed, since defendant and Clark matched the descriptions of the robbery suspects and were found engaging in "furtive" actions close in time and proximity to the crime scene, the officers reasonably suspected that defendant and Clark had committed a crime justifying their approach, even with guns drawn (CPL 140.50 [1]; *People v Chestnut,* 51 NY2d 14, *cert denied* 449 US 1018; *People v Patterson,* 165 AD2d 673, *lv denied* 76 NY2d 989; *People v Brooks,* 88 AD2d 451; *People v Finlayson,* 76 AD2d 670, *lv denied* 51 NY2d 1011, *cert denied* 450 US 931). Once the men fled, the officers were further justified in pursuing them *(People v Leung, supra)* and in subsequently stopping them and in conducting a frisk *(Terry v Ohio,* 392 US 1; *People v De Bour, supra).* Accordingly, defendant's motion to suppress was properly denied.

Contrary to defendant's contentions with regard to the trial

of this matter, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish defendant's guilt beyond a reasonable doubt *(People v Contes,* 60 NY2d 620). Nor was the verdict of guilt against the weight of the evidence (CPL 470.15 [5]). Concur—Kupferman, J. P., Ross, Rosenberger, Kassal and Smith, JJ.